J. MILLARD TAWES, State Comptroller, et al. *v.* ELI STROUSE et al.

[No. 55, October Term, 1943.]

*Decided December 15, 1943.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, MELVIN, ADAMS, and BAILEY, JJ.

*Hall Hammond, Deputy Attorney General,* with whom was *William C. Walsh, Attorney General,* on the brief, for the appellants.

*Abram C. Joseph* for the appellees.

ADAMS, J., delivered the opinion of the Court.

The problem presented by this appeal is the determination of the legislative intent as expressed in the 1939 Income Tax Statute, with reference to a paid-up life insurance policy which was surrendered by Eli Strouse, one of the appellees.

On March 10, 1902, the New York Life Insurance Company issued a twenty-payment life policy on the life of Eli Strouse, providing for the payment of a pre-

mium of $354.20 for the first year, and of $277.80 each year thereafter until twenty years after issuance, when no further premiums were required, and the policy became fully paid up. The policy provided a guaranteed cash surrender value, as set out in a table accompanying the policy, for each year the policy was in force, beginning with the third year.

The total of premiums paid amounted to $5,632.40. Two dividends were allowed during the period when the policyholder was paying premiums: in 1909, the sum of $166.70; and in 1916, the sum of $173.60. These two dividends aggregated $340.30, and reduced the net premiums paid during the twenty-year period to $5,-292.10. Subsequent to the time that the policy became paid up, between the years 1923 to 1939, the dividends paid aggregated $2,293.10.

On September 25, 1939, Eli Strouse surrendered the policy to the insurance company and received as the cash surrender value therefor the sum of $7,560. If all dividends paid prior to and including 1939 are deducted from the aggregate of premiums paid, the excess of surrender value, $7,560, over total net premiums, would be the sum of $4,561. If the determination of net premiums is confined to the twenty-year period during which premiums were paid, the net premiums during the twenty-year period total $5,-292.10, and the proceeds of policy in excess of premiums paid would be $2,267.90. The pertinent provisions of the Income Tax Act of 1939, Code, 1939, Art. 81, are the following:

222. "(m) 'Interest' means interest from whatever source derived, and includes interest from bonds, certificates of indebtedness, evidences of debt, judgments, notes, mortgages and money at interest.

"(n) 'Investment income' means that portion of the gross income which is derived from dividends, ground rents, annuity income and interest, * * *.

"(o) 'Ordinary income' means that portion of the gross income which is not investment income.

"223. (Gross Income and Exclusions Therefrom.) 'Gross income' means income from whatever source derived, including salaries, wages or compensation for personal services of whatever kind and in whatever form paid; interest, dividends, rents, royalties and annuity income; and gains, profits and income derived from professions, vocations, trades, businesses and commerce. 'Gross income' shall not include the following:

"(a) Capital gains realized from the sale, exchange or other disposition of property held by a taxpayer * * *.

"(b) The proceeds of life insurance policies paid by reason of the death of the insured.

"(c) Amounts received (other than amounts paid by reason of the death of the insured) under life insurance or endowment contracts, either during the term or at maturity or upon surrender of the contract, equal to the total amount of the premiums paid therefor."

"244. (Comptroller to Administer.) The Comptroller is hereby authorized and required to administer the provisions of this sub-title. * * * He shall apply as far as practicable the administrative and judicial interpretations of the Federal Income tax law."

The phrase, "income from whatever source derived," has been used in every Federal Income Tax Act since the effective date of the Sixteenth Amendment. It has been used in many State Acts, and the phrase had a fixed and definite legal meaning at the time it was enacted as a part of the Maryland Income Tax Law. The phrase as construed included the proceeds of a surrendered life insurance policy. The case of *Lucas v. Alexander*, 279 U. S. 573, 73 L. Ed. 851, settled the point so far as the federal statute was concerned, and as the Comptroller by Section 244 of Article 81 of the Maryland Act is to apply the "judicial interpretations of the Federal income tax law," it settles also the construction of the Maryland Income Tax Law. The facts briefly stated were that on May 19, 1908, two policies of life insurance on the life of Alexander, each in the

sum of $50,000, became fully paid up. On May 19, 1919, Alexander surrendered the two policies, receiving $120,-797, representing $100,000 face value, plus $20,797 dividends. The gain to him over his total premium expenditure was $42,697. This amount was assessed as taxable income under the Revenue Act of 1918, 40 Stat. 1057. The court said at page 576 of 279 U. S., at page 854 of 73 L. Ed.: "By the expenditure of $78,100 in premiums, the insured secured a return of $120,797, resulting in an economic and realized money gain to him of $42,697."

The court further ruled that the amount paid (page 577 of 279 U. S., at page 854 of 73 L. Ed.), "was a profit or gain upon his premium investment, and would seem to be plainly embraced within the provisions of Section 213 taxing 'gains or profits and income derived from any source whatever,' and not exempted as such from tax by any other provision of the act."

As the Revenue Act of 1918 provided for the apportionment of income as of the effective date of the Sixteenth Amendment, an apportionment of the gain in this case was required, as a part of the gain had accrued before the effective date of the Sixteenth Amendment.

It is thus clear that the proceeds of the surrendered life policy involved in the instant case is included within gross income as defined by Section 223 of the Income Tax Act of 1939. The next question for determination is to what extent the proceeds are exempted from taxation by the subsequent provisions of said Section 223.

By Subsection (a), capital gains are excluded and it has been argued that a large part of the surrender value of the policy is capital. But it is quite clear that the Maryland Legislature could classify the proceeds of a surrendered life policy as it saw fit, exclude it or not from taxable income, as it determined. The State of Maryland is not subject to all the limitations that the Federal Government is subject to with respect to income tax legislation. The case of *Oursler v. Tawes*, 178 Md. 471, 13 A. 2d 763, settled that point. In that

case it was said at page 482 of 178 Md., at page 768 of 13 A. 2d:

"* * *, the power of taxation is inherent in a sovereign State, because the right to tax underlies its own constitution, and is not granted by it. Stated differently, the right may be regulated and limited by constitutional mandates, but it exists without express authority in the fundamental law as a necessary attribute of sovereignty.

"Constitutional provisions relating to the power of taxation do not operate as grants of the power; but do constitute limitations upon a power in the government thus set up, which would be otherwise without limit."

The case further decided that the courts "have separated the taxation which may be levied upon the inhabitants of Maryland into two kinds: the one, taxes upon the individual according to his property; the other, taxes laid with a political view for the good government and benefit of the community. * * * In regard to the second class * * * there seems to be no limitation laid upon the power of the Legislature by this article, (Article 15 of the Constitution), except that such taxes are not to be laid upon property as such."

The Maryland Legislature has seen fit to exempt from gross income only a sum "equal to the total amount of the premiums paid therefor." Section 223 (c).

Our conclusion is that dividends paid after the policy became paid up should be considered as income in the year in which received, and that therefore the dividends paid between 1923 and 1939, aggregating $2,293.10, should not be deducted from the aggregate of premiums paid. Dividends allowed in the year in which a premium is due are ordinarily credited on the premium due. So only the dividends allowed in 1909 and 1916 should be deducted from premiums paid in determining the net premium paid for the policy.

As to whether the excess of proceeds on surrender of the policy over premiums paid should be classed as "Investment income" or "Ordinary income," we find

that the conclusion of the Attorney General in his opinion rendered November 2, 1940, to the State Comptroller, is sound, and our conclusion is that the excess of the surrender value over the aggregate of premiums paid "represents money paid for the use of money and hence can be fairly said to be interest."

We find, therefore, that the difference between the surrender value of the policy in question, $7,560, and the aggregate of premiums paid, $5,292.10, to wit: $2,267.90, is investment income and subject to tax at the rate of 6 per cent.

> *Order reversed, and case remanded for the entry of an order in accordance with this opinion. Appellees' costs only to be paid by appellees.*