# MARCO ASSOCIATES, INC. *v.* COMPTROLLER OF THE TREASURY OF THE STATE OF MARYLAND

[No. 183, September Term, 1971.]

*Decided June 7, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ., and JAMES MACGILL, Chief Judge of the Fifth Judicial Circuit, specially assigned.

*Steven A. Winkelman,* with whom were *Winkelman & Delaney* on the brief, for appellant.

*Jon F. Oster, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

When the Comptroller assessed an income tax deficiency of $6,794.23 for the fiscal period ended 30 April 1968 against Marco Associates, Inc. (Marco), the taxpayer sought to overturn the assessment on an appeal to the Maryland Tax Court. From an adverse ruling there, Marco appealed to the Circuit Court for Montgomery County, which affirmed, and from the circuit court to this Court.

Marco, a Maryland corporation, had elected to be taxed, for federal income tax purposes, as a Subchapter S corporation, as permitted by *Internal Revenue Code,* 26 U.S.C. § 1371 *et seq.* with the consequence that its earnings were attributed to the stockholders of Marco, who paid the federal income tax thereon.

In 1964, Marco sold certain real estate which it owned

for $1,015,000.00, and realized a long-term capital gain of $704,903.93, or 69.4487% of the sale price, a gain which it elected to recognize, for purposes of federal income tax, on an installment sale basis, as permitted by 26 U.S.C. § 453. Installments of the sale price were received in 1964, 1966 and 1968 in amounts of $100,000.00, $167,696.70 and $117,696.70, respectively.

In 1968, the stockholders of Marco liquidated the corporation and there was then distributed to the stockholders the installment payment collected in that year, as well as the note representing the then unpaid balance of purchase price. As an incident to the liquidation, and in compliance with the provisions of 26 U.S.C. Subchapter C—*Corporate Distributions and Adjustments*, Part II, *Corporate liquidations*, Marco was required to recognize on its federal tax return not only the gain attributable to the 1968 payment, but also the remainder of the gain which had been deferred. Accordingly, Marco reported a long-term capital gain of $189,368.35 on line 9 (b) of its 1968 federal income tax return, form 1120-S.

Marco's 1968 federal income tax return is not a part of the record, but it would seem to be conceded that it reported taxable income of $211,138.06, of which the $189,386.35 gain was a part. Presumably, Marco paid no federal tax on this income, which was passed through to the stockholders because of its Subchapter S status, Bittker and Eustice, *Federal Income Taxation of Corporations and Shareholders*, ¶ 6.09 (2), at 6-32 (1971).

By virtue of the provisions of Maryland Code (1957, 1969 Repl. Vol.) Art. 81, § 288 (b) and (c), corporate taxpayers pay a Maryland income tax of 7% on net income as defined by § 280A (a) as the "taxable income of such taxpayer as defined in the laws of the United States" modified by certain additions and deductions not applicable here, except the subtraction of 50% "of the excess of net long-term capital gain over net short-term capital loss," permitted by § 280A (c) (2).

On its 1968 Maryland return, Marco deducted the entire amount of the capital gain, on the theory that it was

a "capital gain transaction * * * not subject to tax under Maryland law in effect in year in which sale occurred," but paid a tax of $1,205.24 on other income of $22,956.95. The Comptroller's reinstatement of 50% of the gain gave rise to an additional tax liability of $6,628.-52 with interest of $165.71, or a total of $6,794.23.

Marco makes much of the fact that the land had been sold in 1964, when the gain was realized, and that all that happened in 1968 was that the lion's share of the indebtedness represented by the note, still unpaid, had been distributed to its stockholders in the course of the liquidation.

The summary of the historical background of portions of Chapter 142 of the Laws of 1967, Maryland Code (1957, 1969 Repl. Vol.) Art. 81, §§ 279-283, 287-289, 323-323A (the Act) which substantially revised Maryland's income tax law, which may be found in *Katzenberg v. Comptroller,* 263 Md. 189, 191-192, 282 A. 2d 465 (1971) need not be repeated here.

When the Act, in § 280A (a) adopted as net income for State income tax purposes the taxable income which a corporate taxpayer reported for federal income tax purposes, subject to the modifications contained in § 280A (b) and (c), it brought capital gains and losses of a corporate taxpayer within the ambit of the Maryland income tax for the first time, as we noted in *Katzenberg, supra,* 263 Md. at 192, 198.

Marco argues that the assessment of the additional tax was invalid for four reasons, which we shall consider in the order presented.

> (i) The attempted imposition of the tax was retroactive.

The thrust of this argument is that a statute which seeks to impose a tax in 1968 upon a transaction entered into in 1964 is impermissibly retroactive. The same argument was advanced in *Katzenberg, supra,* where after noting that a tax is not necessarily invalid simply because it is retroactive, *Diamond Match Co. v. State Tax Comm.,* 175 Md. 234, 200 A. 365 (1938), we said:

"As we understand this argument, it is in essence that the gain was realized when the notes in question were accepted by the Katzenbergs, and that the imposition of the Maryland tax on the proceeds collected in satisfaction of the notes is tantamount to the imposition of a tax on the collection of a debt.

"We do not see it quite that way. Under our view, the existence of a capital gain was realized when the sales were made (assuming the notes were paid or could be disposed of), but the Katzenbergs preferred to defer the recognition of the gain for federal tax purposes until the time when and if the notes were paid or otherwise disposed of. It was the deferral of some part of this recognition until the years 1967 and 1968, when the Maryland Act was fully operative which brought the gains recognized in those years within the scope of the Act." 263 Md. at 200-201.

*See also Commonwealth v. Electrolux Corp.,* 362 Pa. 333, 67 A. 2d 105 (1949) ; *Commonwealth v. Warner Bros. Theatres, Inc.,* 345 Pa. 270, 27 A. 2d 62 (1942) ; *Ebling Co. v. Graves,* 259 App. Div. 427, 20 N.Y.S.2d 123 (1940), *aff'd without opinion,* 284 N. Y. 689, 30 N.E.2d 726 (1940).

(ii) The attempt by the State of Maryland to tax the subject transaction was an attempt to tax an appreciation in property rather than income and, therefore, a property rather than an income tax.

In *Katzenberg, supra,* we dealt with the same contention. At 204-205 of 263 Md., we said:

"To accept this argument requires us to close the gap between taxes on income, to which the uniformity requirement of Article 15 of the Declaration of Rights was held not to apply by

*Oursler v. Tawes, supra* [178 Md. 471, 13 A. 2d 763 (1940)], ·and taxes on property, to which the uniformity requirement does apply. The Katzenbergs would bridge this void by arguing that accumulations of income become property and that an increase in the value of an asset represents either an accumulation of income or the increase in the value of a capital asset, which is a property right.

"Appealing as this argument may be, it overlooks a basic element: that the whole thrust of the Maryland Act is to impose a tax on the amount determined under the Internal Revenue Code as the adjusted gross income of an individual or the taxable income of a corporation. This is a formula or yardstick objectively derived which initially takes no account of the source, nature or composition of the funds; it is simply a figure developed by the federal return.

"Attempts to draw analogies from the federal cases offer little help, for as we pointed out in *Oursler v. Tawes, supra* there is a wide disparity between state and federal power in this area. The State's power to tax is a basic attribute of sovereignty, and Article 15 of the Declaration of Rights is not a grant of such power, but rather a limitation upon it. No similar power rested in the government of the United States, which is the reason why it was necessary to adopt the 16th Amendment to the Constitution in order to permit the passage of valid federal income tax laws and why draftsmen have taken particular care not to extend the reach of federal legislation before 1 March 1913. The state is subject to no such limitation, *compare City National Bank of Clinton v. Iowa State Tax Comm., supra* [251 Ia. 603, 102 N.W.2d 381 (1960)] *with McLaughlin v. Alliance Ins. Co.,* 286 U. S. 244, 52 S. Ct. 538, 76 L. Ed. 1083 (1932)."

(iii)  Attempted imposition of the tax in 1968 by Maryland actually results in double taxation in violation of Section 304, Article 81 of the Annotated Code of Maryland.

Code (1957, 1969 Repl. Vol.) Art. 81, § 304 sets up the general guidelines under which the Act is to be administered. The thrust of Marco's argument is this:

"Maryland, prior to 1967, did not recognize an installment sale as set forth in the Federal tax laws, nor the method of reporting on such a transaction. Thus, in our case, in 1964, under the Maryland method of reporting then in effect, Maryland could have only taxed the ordinary income aspect, not capital gains, i.e., at the time the transaction was entered into. Under the facts of our case, of course, Maryland could not have imposed such a tax since the tax was a capital gains transaction. If the taxpayer had entered into an installment sale of inventory property, and Maryland could have taxed that transaction on an ordinary income basis, and then again in 1968 at the time that the income was reported as a capital gain, this, in effect, would result in double taxation and be violative of the law."

Without passing on the soundness of the argument, the short answer is that Marco is posing a hypothetical case —not the case which we are considering. We are constrained to note, however, as we did in *Katzenberg, supra,* 263 Md. at 204, that the Act does not purport to be a tax on capital gains as such or a tax on installment payments as such, but is rather a tax liability derived from the concept of income developed for federal income tax purposes.

Since our Act does not accord Subchapter S treatment to a corporate taxpayer which elects to be treated as such for federal tax purposes, it follows that such a tax-

payer is looked upon for purposes of the Maryland tax as if it were an ordinary business corporation, and its Maryland stockholders as if they were the holders of shares in such a corporation, *see* § 280 (b) (5), § 280 (c) (2). This may not be fair, but it is a fact of life, *see Garlin v. Murphy,* 51 Misc. 2d 477, 273 N.Y.S.2d 374, 377 (1966).

> (iv) The attempt to tax this transaction was violative of the Fourteenth Amendment as applied to the State of Maryland.

Again, we return to the rubric of *Katzenberg:*

> "The thrust of this argument is that the inequality of treatment accorded taxpayers who do and do not elect to report capital gains on an installment basis makes the tax imposed by the Act arbitrary and discriminatory and thus unconstitutional. The Katzenbergs, in support of this argument, refer us to *Blaustein v. State Tax Commission,* 176 Md. 423, 4 A. 2d 861 (1939) which struck down as unconstitutionally discriminatory Chapter 302 of the Laws of 1935, which attempted to impose a tax of 6% on income derived from trusts created by residents of Maryland who placed the trust assets in the hands of non-resident trustees, but imposed no such tax on income derived from trust assets in the hands of resident trustees.
>
> "It seems to us that the State has the better of this argument when it says that the Act uses as a base an individual taxpayer's adjusted gross income reported for federal income tax purposes, with certain additions and subtractions. The Act is not directed at payments received from installment sales before the date of its enactment. Neither does it purport to be a tax on capital gains as such or a tax on installment payments as such. It is rather a tax measured by the yardstick of income reported for

federal tax purposes, whether capital gains be reflected in this figure or not. This is by no means the discrimination identified in *Blaustein v. State Tax Commission, supra* at 429, as 'taxing one group of persons * * * without including others who are similarly situated.' Impermissible discrimination is spawned not by reasonable classification but by arbitrary distinctions between persons in the same class." 263 Md. at 203-204.

and:

"The argument that a State capital gains tax was not within the Katzenbergs' contemplation at the time they made the sale is equally unpersuasive. Maryland had an income tax at the time, and the Katzenbergs knew, or should have known, that the circumstance that capital gains were not taxed was no more than an exemption, *City National Bank of Clinton v. Iowa State Tax Comm., supra.*" 263 Md. at 200.

* * *

"It is undoubtedly true that the General Assembly, had it seen fit to do so, could have imposed a tax on a taxpayer's gross income, without considering the source from which it came, whether it be earnings, investment income or profits realized from the sale of capital assets, and without granting exemptions, allowing deductions or permitting any other adjustments. If it could validly do this, and we think it could, there is no reason to doubt that it could select some other figure, objectively arrived at, upon which the tax could be based, *Tawes v. Strouse,* 182 Md. 508, 512-13, 35 A. 2d 233 (1943). It did this when it chose to base the tax on the figures for adjusted gross income and taxable income, as developed by the federal returns." 263 Md. at 205-206.

A thread which is common to all of Marco's arguments and is presented *in limine* in its brief is essentially this: nothing changed when the corporation was liquidated. Except for the $117,696.70 payment received in 1968, the stockholders to whom the note was transferred received nothing other than the note, on which no payment was being made. The fact that a gain had to be recognized on the balance of the note unpaid at the time Marco was liquidated was occasioned by a technical requirement of the Internal Revenue Code, rather than because of any real change in the situation of the parties.

This argument, however, overlooks the manner in which the Maryland income tax is structured. Its focus is on the taxable income of a corporation, or the adjusted gross income of an individual, as the same is developed in the taxpayer's federal income tax return, subject to the modifications permitted by the Act, whether a federal tax is or is not generated by the federal return.

The fact that a gain recognized by a Subchapter S corporation and reflected in its taxable income may be attributed to the corporation's shareholders under federal law does not alter the fact that it remains within the concept of taxable income under the Act—a figure upon which the Maryland tax is based.

Admittedly, as Marco argues, the gain was realized at the time the property was sold, but Marco elected to postpone the recognition of the gain for tax purposes until the installments of purchase price were collected. By so doing, Marco chose to defer the capital gain reflected in such payments until the year in which they were received or until the year in which they had to be recognized under the Internal Revenue Code. When the payments or the gain became a part of Marco's taxable income—for whatever reason, and whether or not a federal tax was payable—they became taxable under the Act.

We find no reason to disturb the result reached below.

*Judgment affirmed, costs to be paid by appellant.*