CLARENCE E. LEATHERWOOD, JR. *v.* STATE OF MARYLAND

[No. 15, September Term, 1981.]

*Decided October 8, 1981.*

The cause was argued before GILBERT, C. J., and MORTON and THOMPSON, JJ.

*John E. Welsh* for appellant.

*Jane E. Pilliod, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Warren B. Duckett, Jr., State's Attorney for Anne Arundel County, George S. Lantzas* and *Daniel L. Doherty, III, Assistant State's Attorneys for Anne Arundel County,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

It is written that "Freedom is Not Free." [1] In fact, to remain "free" often costs dearly. Not only must a military force be maintained, local, State, and federal governments operated, but schools, fire protection and police protection must all be supported.

For its part, the State government may not simply print a form of currency to pay for the operation of the various State agencies, all of which exist for the benefit of all the people of the State. Consequently, to obtain adequate funds to carry out its mission, the State imposes divers taxes.

One type of tax that the State of Maryland has utilized since 1940 [2] is the progressive income tax. Md. Ann. Code art. 81, § 294, provides in part:

> "(a) Individuals generally. — (1) Every individual resident of this State, and every individual not a resident of this State receiving income derived from sources within this State, other than fiduciaries, who is required to file a federal income tax return under the provisions of § 6012 (a) of the Internal Revenue Code, as amended from time to time, or whose federal income together with any

---

1. Wellington J. Griffith (1956), *Freedom is Not Free.*
2. Laws, 1939, ch. 277, § 223.

modification additions contained in § 280 (b) of this subtitle exceed the limits provided by said § 6012 (a), shall file with the Comptroller a return in such form as the Comptroller shall prescribe, and shall attach to said return a copy of the statement received from his employer showing his compensation, salary or wages and the Maryland income tax withheld therefrom.

(2) Notwithstanding any other provision of this section to the contrary, the income level at which a dependent taxpayer must file a tax return is determined under the provisions of § 6012 (a) (1) (A) (i) of the Internal Revenue Code, as amended from time to time, together with any modifications contained in § 280 of this subtitle.

(3) Notwithstanding any other provisions of this subtitle to the contrary, any individual not required to file an income tax return to this State in accordance with the provisions of this subsection, shall not be liable for any income tax otherwise due under this subtitle. Such individual, by filing a return in such form as prescribed by the Comptroller, shall be entitled to a refund of all income taxes either withheld or paid as an estimated tax under the provisions of § 312 of this subtitle."

The appellant, Clarence E. Leatherwood, Jr., filed the prescribed tax form for each of the years 1977, 1978, and 1979. Yet, in none of the forms did he report any income whatsoever, but instead, indicated that he objected to revealing his income. He elected to stand behind the protective garb of the Fifth Amendment·to the Constitution of the United States.[3]

---

3. Mr. Leatherwood varied his returns filed with the Comptroller of the Treasury, State of Maryland, insofar as the reasons for noncompletion of the fiscal information is concerned. On the 1977 return, he objected on "4th and 5th Amendment" grounds.

The 1978 return expanded on the Constitutional reasons for noncompletion, asserting that he objected on "5th" as well as "1st, 4th, 7th, 8th, 9th, 10th, 13th, 14th & 16th" Amendment grounds.

Needless to say, the Comptroller was not enraptured with the returns filed by the appellant. Attempts were made to have Mr. Leatherwood file completed reports, but those efforts failed. Mr. Leatherwood, however, indicated that he would be willing to file the reports if the State could show him how he could do so without disclosing either the amount of his income or the source. Understandably, the Comptroller did not avail himself of Mr. Leatherwood's invitation, nor could he have successfully done so.

Finally, the matter of appellant's non-disclosure of income and failure to file completed tax returns found its way to the State's Attorney for Anne Arundel County. Three criminal informations were issued by the prosecution. Mr. Leatherwood was charged with two counts of perjury in connection with each of his 1977, 1978, and 1979 Maryland Income Tax Returns, one count in each of failure to file by reason of refusing to report his 1977, 1978, and 1979 income, respectively, and one count in each of wilfully failing to file his 1977, 1978, and 1979 State Income Tax Returns, respectively.

At the conclusion of the State's case, Judge Bruce C. Williams, in the Circuit Court for Anne Arundel County, granted a judgment of acquittal on both perjury counts. Ultimately, the case went to the jury, which returned a verdict of guilty to count three of each information. Following the imposition of sentence, Leatherwood appealed to this Court.

We shall consider the two questions put to us by the appellant in the reverse order to that posed by him, inasmuch as his second issue, if availing, would be dispositive of the appeal.

I.

"Is the Maryland Income Tax Statute unconstitutional since it constitutes an

---

The 1979 return simply stated "Object: Self-Incrimination." That answer was interposed to each and every question on the return except, name, address, social security number, and county of residence. Mr. Leatherwood did deign to affix his signature to the returns.

impermissive delegation of legislative responsibility under the Maryland Constitution?"

Md. Ann. Code art. 81, § 280, provides in pertinent part:

"(a) In general. — The taxable net income of an individual taxpayer of this State shall be that taxpayer's federal adjusted gross income as defined in the laws of the United States, as amended from time to time and in effect for the corresponding taxable year, with the modifications and less the deductions and personal exemptions provided in this subtitle."

Leatherwood recognizes that the Court of Appeals has held that "[t]he State's adoption of the Federal definition of income does not constitute a delegation of legislative authority. . . ." *Katzenberg v. Comptroller of the Treasury,* 263 Md. 189, 200, 282 A.2d 465 (1971). He asserts, however, that the conclusion reached by this State's highest court "is unsupported by the cited authority and should be re-examined." In short, we are asked to overrule *Katzenberg* and declare the State income tax law to be unconstitutional. To follow that course, we would have to ignore three other subsequent cases decided by the Court of Appeals, *scilicet: Comptroller v. Diebold,* 279 Md. 401, 369 A.2d 77 (1977); *Evans v. Comptroller of the Treasury, Income Tax Division,* 273 Md. 172, 328 A.2d 272 (1974); *Marco Associates, Inc. v. Comptroller of the Treasury,* 265 Md. 669, 291 A.2d 489 (1972).

*Marco* quoted from *Katzenberg* that:

" 'It is undoubtedly true that the General Assembly, had it seen fit to do so, could have imposed a tax on the taxpayer's gross income, without considering the source from which it came, whether it be earnings, investment income or profits realized from the sale of capital assets, and without granting exemptions, allowing deductions or permitting any other adjustments. If it could validly do this, and we

think it could, there is no reason to doubt that it could select some other figure, objectively arrived at, upon which the tax could be based, *Tawes v. Strouse,* 182 Md. 508, 512-13, 35 A.2d 233 (1943). It did this when it chose to base the tax on the figures for adjusted gross income and taxable income, as developed by the federal returns. 263 Md. at 205-206.'" 265 Md. at 677.

*Evans* said, in 273 Md. at 175:

"Finally, we consider Evans' contention that Maryland cannot constitutionally use as a basis for State income taxes the adjusted gross income figure developed by a taxpayer's federal income tax return. The use of the taxpayer's federal adjusted gross income is mandated by Code art. 81, § 280 (a). As we noted in *Katzenberg v. Comptroller, supra,* 263 Md. at 204-05, 282 A.2d at 473, '[t]his is a formula or yardstick objectively derived which initially takes no account of the source, nature or composition of the funds. . . .' "

*Diebold* stated:

"[W]e have held that the Maryland income tax law is to be construed in a fashion conformable to the Internal Revenue Code to which it is inextricably keyed, *Marco Associates, Inc. v. Comptroller,* . . . [*supra*]; *Katzenberg v. Comptroller,* . . . [*supra*]." 279 Md. at 408-09.

We think it clear that the Court of Appeals has had ample opportunity to review its *Katzenberg* holding and that it has repeatedly upheld the constitutionality of the Maryland income tax law. If an appellate court is to retrace the path trod by the Court of Appeals and conclude that the income tax law of this State is unconstitutional, it is the Court of Appeals that must make the journey, not this Court.

On the basis of the prior, well-reasoned and unambiguous decisions of the Court of Appeals, we have no hesitancy in

declaring that the Maryland State Income Tax Law is constitutional and does not contain, with respect to section 280, an unlawful delegation of legislative authority.

## II.

"The trial judge's instructions to the jury were legally insufficient and clear error since they misstated [the] scope of the Fifth Amendment privilege and failed to indicate that an erroneous but good faith reliance on the Fifth Amendment would preclude a finding of willfulness."

Undoubtedly, the Fifth Amendment to the federal constitution [4] protects against compelled self-incrimination.[5] The amendment, however, does not protect against every conceivable question that may be put to an accused, but only those that tend to incriminate him. *Pyles v. State,* 25 Md. App. 263, 334 A.2d 160, *cert. denied,* 276 Md. 748 (1975).

Leatherwood's 1979 State Income Tax Return showed that he answered the questions: "Your occupation"; "Spouse's Social Security Number"; "Spouse's Occupation"; "Your filing status," *i.e.,* "Single," "Married filing joint return or spouse had no income," "Married filing combined separate returns on this form," "Married filing separately," "Exemptions" and "Other exemptions allowed by Maryland" with the words: "Object. Self-Incrimination."

When Leatherwood was called by his counsel to testify, he said he inspected cars for a used car dealer. He was audited by the Internal Revenue Service for the tax year 1974. As a result of that audit, I.R.S. allegedly informed him that he owed an additional $1,700 federal income taxes. Later, I.R.S.

---

4. Although not relied upon by the appellant, Maryland Constitution, Declaration of Rights, Article 22 provides: "That no man ought to be compelled to give evidence against himself in a criminal case." The State Constitutional provision is in *pari materia* with its federal counterpart, Brown v. State, 233 Md. 288, 196 A.2d 614 (1964), the Fifth Amendment. Bass v. State, 182 Md. 496, 35 A.2d 155 (1943).

5. Cummings v. State, 27 Md. App. 361, 341 A.2d 294, *cert. denied,* 276 Md. 740 (1975).

advised him that they owed him "three hundred odd dollars." Finally, his indebtedness was determined to be "two hundred seventy odd dollars." He claimed that his "reaction" to the I.R.S. "duress" caused him to have "nervous tension," and that he "was afraid of them."

Leatherwood further told the jury that there was a connection between I.R.S. and the State Income Tax Division. He said they "have reciprocal agreements for information. And they exchange information that's on your 1040 form." He had no objection to paying State income taxes, but he refused to divulge the amount of his income.

The appellant had read a number of magazine articles and newspaper accounts about I.R.S. harassment of taxpayers and government control of individuals through the offices of I.R.S. Leatherwood relied particularly upon page 14 of a publication titled: *Citizen's Guide to Individual Rights Under the Constitution of the United States of America.*[6] The language of that article that Leatherwood believed controlling in his tax matters reads:

> "Government regulations which required registration of items such as highly dangerous weapons or narcotics which were a crime to possess also have been invalidated on the grounds that they require information which may be used in criminal prosecution against the person who registers the item in question. *However, one is not excused from filing a tax return because it is incriminatory: the privilege must be asserted on the return or it will be waived."* (Emphasis supplied.)

Leatherwood reported that he did not intend to evade or defeat the payment of Maryland income taxes. He said, "I mean, if I can uh, if I can pay income tax without giving up my rights under the constitution [not to reveal the amount of income], I'll be glad to."

---

**6.** The publication was prepared by The Subcommittee on Constitutional Rights of the Committee on the Judiciary United States Senate, 94th Congress, 2d Session. (Fifth Ed. October, 1976).

On cross-examination, he again stated that he was "afraid of the IRS" because he had gone "through a, a trying situation with . . . [an] audit." He was also "afraid" that he would be charged with "a crime" if he completed the information required on his Maryland Income Tax Report. Leatherwood opined that, "I'm afraid that I might be in . . . an unlawful position with the Securities and Exchange Commission. The Federal Trade Commission." With respect to the S.E.C., his "fear" was generated by his having bought stocks. He did not explain his comment about the F.T.C.[7]

Judge Williams instructed the jury in pertinent part:

> "Now in this case, there really is not too much dispute as to what the facts are. And I think that the testimony as you have heard it, clearly would indicate that there is not much dispute. And it is for you to interpret what you have heard in terms of the law as I shall further attempt to explain it to you. Failure to file a Maryland income tax return is the willful failure to file a Maryland income tax return in the manner or fashion prescribed by the provisions of Maryland Law and/or the willful refusal to report the amount of income received or earned during the taxable period. The term "willful" for the purposes of these instructions means voluntary, deliberately and intentionally; as distinguished from accidentally, inadvertently or negligently. Willfulness in the context of a failure to file a proper tax return simply means a voluntary intentional violation of a legal obligation to file such a return. An individuals' [*sic*] fifth amendment privilege does not permit a person to completely refuse to disclose on his income tax return, any information relating to his income. You are instructed that three essential elements must be proven to establish each of

---

7. We infer from the record that Leatherwood's federal returns contain a similar lack of information. He said, "Evidently, the federal government doesn't mind, because they haven't charged me with filing an illegally — a return yet."

the offenses charged in the . . . [information]. And, for purposes of these instructions, Counts Three and Four of each . . . [information] charging the defendant with failure to file a Maryland income tax return are the only charges that will be submitted to you for your consideration. Those are Counts Three and Four in . . . information 23, 764, 765 and 766.

First, that the defendant was the person required by law or regulation to make a return of his income for the year in question. Second that the defendant failed to make such a return at the time required by law. Third, that the defendant's failure to make a return was willful. The burden is on the prosecution to prove all three elements of the offense charged beyond a reasonable doubt. The law never imposes on the defendant in a criminal case the burden of producing any evidence or calling any witnesses. If you find that the prosecution failed to prove any element of the three elements, you must find the defendant not guilty.

Unless the State proves beyond a reasonable doubt that the defendant has committed every element of the offense, with which the defendant is charged, then you must find him not guilty. You are instructed that one of the primary functions of the Fifth Amendment privilege against self incrimination is to protect innocent men. Every person is entitled to the full enjoyment of his constitutional privilege against self incrimination.

You are further instructed that if a person wishes to assert his right against self incrimination regarding specific items on a tax return, as to the source of his income, he must do so on the tax return itself, or forever waive the privilege." [8]

---

8. Subsequently, the court modified its charges and instructed the jury that it could not find the appellant guilty of more than one count in each information; that is, if guilty of count 3, he could not be found guilty of count 4 and *vice versa*.

Immediately following the instruction, counsel conferred with the judge about exceptions to his jury charge:

"Mr. Welsh [appellant's counsel]: . . . And then I'd take exception to the Court not reading. And I wrote the number down, Your Honor.

The Court: Well maybe you can use this for purpose of reference.

Mr. Welsh: Right. Re — not reading defendant's jury instruction number ten,[9] eleven,[10] twelve,[11] thirteen,[12] and fourteen,[13] fifteen,[14] sixteen[15]."

With respect to the appellant's prayers numbers 10, 11, 12, 13, 14, 15, and 16, Judge Williams' instructions were adequate. The judge was not required to give each instruction asked by the appellant in the precise wording of the appellant. The law is satisfied if the trial court's instructions read as a whole adequately and clearly state the law applicable to the case. *Nizer v. Phelp,* 252 Md. 185, 249 A.2d 112 (1969); *Alston v. Forsythe,* 226 Md. 121, 172 A.2d 474 (1961); *Kable v. State,* 17 Md. App. 16, 299 A.2d 493, *cert. denied,* 268 Md. 750 (1973); *Shotkosky v. State,* 8 Md. App. 492, 261 A.2d 171 (1970). While the road map verbally drawn for the jury by the judge could have been more pre-

---

9. Defendant's requested instruction No. 10 dealt with a good faith reliance on a prior Supreme Court decision.

10. Defendant's requested instruction No. 11 asked that the court instruct the jury that if the tax return form called for answers that were privileged, the defendant could raise the objection on the return, etc.

11. This instruction requested by the defendant would have had the court instruct the jury that if they believed the reasons given by the defendant for refusing to answer the questions on the Maryland Income Tax Form were made in "good faith," they should consider "whether or not his refusal to answer the questions [on the form] was willful."

12. Defendant's requested No. 13 instruction concerned the meaning of "willfullness."

13. Defendant's requested instruction No. 14 would have had the judge tell the jury that they could draw no inference of guilt because of the fact that Leatherwood asserted his Fifth Amendment rights on the tax return.

14. Defendant's instruction No. 15 was to the effect that the Federal Constitution is the supreme law of the land.

15. Defendant's requested instruction No. 16 is a rehash of the requested instruction No. 13 phrased differently.

cise, it was sufficient for the jury to find its way through the maze of law. We perceive no error.

Appellant's counsel also voiced his objection to an instruction requested by the State, which the judge apparently granted. The objection to the instruction took the following form:

"And I also object to . . . the . . . Fifth Amendment, instructions which was submitted by . . . the State in the Court Room. (Unintelligible)."

Md. Rule 757 f provides:

"If a party has an objection to any instructions, to any omission therefrom, or to the failure to give an instruction he shall make objection on the record before the jury retires to consider its verdict and *shall state distinctly the matter of omission, or failure to instruct to which he objects and the grounds of his objection.* Upon request of any party, the court shall receive objections out of the hearing of the jury." (Emphasis supplied.)

We think the appellant's exception to the trial judge's jury instruction is neither clear nor distinct. The mere statement that appellant "objects to the . . . Fifth Amendment instructions . . . submitted by . . . the State" simply does not meet the requirement of the rule that a party furnish the trial judge with "the grounds" for the party's objection.

Faced with the indistinct exception articulated in the instant case, the judge was left, as are we, to speculate as to the specific grounds of the objection and, thus, had no opportunity to correct, modify, or clarify his jury instructions, if such action was, in the judge's view, warranted.

The best label we can place upon the appellant's exception is that it was "a shot-gun approach," without any specifics, and consequently insufficient to satisfy the rule.

We have repeatedly held that one of the prime purposes of Rule 757 f is to afford the trial judge an opportunity to correct any misstatement of law, clarify an ambiguity, or

correct inaccuracies. *See, e.g., Sine v. State,* 40 Md. App. 628, 394 A.2d 1206 (1978), *cert. denied,* 284 Md. 748 (1979); *Mason v. State,* 18 Md. App. 130, 305 A.2d 492 (1973); *cert. denied,* 416 U.S. 907 (1974); *Vernon v. State,* 12 Md. App. 157, 277 A.2d 635 (1971); *Parker v. State,* 4 Md. App. 62, 241 A.2d 185 (1968), *cert. denied,* 402 U.S. 984 (1971). Our holdings follow the lead of the Court of Appeals in *Bennett v. State,* 230 Md. 562, 188 A.2d 142 (1963); *Canter v. State,* 220 Md. 615, 155 A.2d 498 (1959); and *Reynolds v. State,* 219 Md. 319, 149 A.2d 774 (1959). *But see Sergeant v. Pickett,* 283 Md. 284, 388 A.2d 543 (1978).[16]

Our review of the record, nevertheless, indicates that the State submitted to the judge, and he in turn advised the jury: "An individuals' [*sic*] [F]ifth [A]mendment privilege does not permit a person to completely refuse to disclose on his income tax return, any information relating to his income. . . ."

We infer that is the instruction to which appellant's counsel alluded, but we are unable to deduce with any degree of certainty his reasons for the objection. The exception is not adequately preserved for appellate review. Md. Rule 757 f.

One final comment need be made. In this Court appellant contends that Judge Williams erred in declining to instruct the jury in accordance with appellant's ninth prayer. Nowhere in the record can we find that appellant excepted to the judge's declination to instruct in accordance with that prayer. Absent a timely exception, there is nothing for us to review. The issue simply is not before us. *See* Md. Rules 757 f, 757 h, and 1085.

*Judgments affirmed.*
*Costs to be paid by appellant.*

---

16. The Court of Appeals there reversed and remanded No. 452 (Md. App., filed December 27, 1977). The case was subsequently before the Court of Appeals, 285 Md. 186, 401 A.2d 651 (1979), *rev'g and remanding* No. 452 (Md. App., filed November 8, 1978), and was again before this Court, *sub nom, Sergeant Co. v. Clifton Building Corp.,* 47 Md. App. 307, 423 A.2d 257 (1980), after a second trial.