## CHARLES and VALONA F. MOSER *v.* DEPARTMENT OF REVENUE

Frederick H. Torp and Harry S. Chandler, Portland, appeared for plaintiffs.

G. F. Bartz, Assistant Attorney General, Salem, appeared for defendant.

Decision for plaintiffs rendered December 21, 1970.

CARLISLE B. ROBERTS, Judge.

The plaintiffs, husband and wife, appeal from the Department of Revenue's Order I-70-17, dated June 12, 1970, assessing personal income taxes to the plaintiffs in addition to those reported for the tax years 1964, 1965, 1966 and 1967. The plaintiffs had sold timber to an Oregon corporation, all of the stock of

which was owned by them, for an amount which was about one-fourth of the going market price at the time of sale. It was the department's conclusion that such sales distorted the personal income tax returns of the plaintiffs and that additional assessment of taxes was proper under ORS 314.295. Plaintiffs allege that neither ORS 314.295 nor any other section of the Oregon statutes provide authority for the defendant to attribute to plaintiffs receipt of income where in fact no income was received by virtue of the bargain sales of timber to the wholly owned corporation. (Plaintiffs acquiesce in defendant's adjustments to contribution and medical expense deductions in the tax years 1966 and 1967.)

The facts have been stipulated as follows:

"1. Charles Moser and Valona F. Moser, the taxpayers, are husband and wife residing in Kings Valley, Oregon, at all times material to these proceedings. The taxpayers are officers, stockholders, and directors of Moser Lumber Company and are partners in Moser Bros. Lumber Co. They do not in their individual capacities conduct any trade or business. During the years in question, taxpayers had no income reported to any state other than Oregon.

"2. Moser Lumber Company, hereinafter referred to as the corporation, is an Oregon corporation organized in 1947. The principal business activity of the corporation is the operation of a sawmill, a planing mill and a veneer plant located in Kings Valley, Oregon. The corporation also engages in logging operations and the purchase and holding of timber lands. The corporation has no employees and owns no business property outside of the State of Oregon. All sales of the corporation's products are made from its Kings Valley

office. No income is reported to any state other than Oregon.

"3. The officers of the corporation at all times material to this determination were as follows:

| | |
|---|---|
| President | Charles Moser |
| Executive Vice President | Ronald Moser |
| Vice President and Secretary | Valona F. Moser |
| Treasurer and Assistant Secretary | William P. Eddy |

"4. The directors of the corporation at all times material to this determination were Charles Moser, Valona F. Moser, and Ronald E. Moser. The taxpayers and Moser Bros. Lumber Co., a partnership, own all of the outstanding stock of the corporation.

"5. The sawmill operated by the corporation was built in 1960 and designed for a production capacity of 15 million board feet per year on a one-shift operating basis. The corporation is the major employer in Kings Valley. When operating at capacity, approximately 65 persons are employed in the mill and logging operations. A separate sawmill owned by the corporation since 1947 was destroyed by fire in 1962 and was not rebuilt.

"6. Moser Bros. Lumber Co., hereinafter referred to as the partnership, is a partnership formed in 1944. Charles and Valona Moser are the only partners. The only function of the partnership is to hold investment properties consisting solely of timber lands. The partnership does not engage in any trade or business. During the period in question in this determination, its assets consisted of the Pratt, Miller, and Pennsylvania tracts referred to in these proceedings, cash, accounts receivable from timber sales, and several additional timber tracts. No partnership income is reported to any state other than Oregon.

"7. The dates of acquisition of the various timber tracts were as follows:

| | |
|---|---|
| Cugini Tract | December, 1953 |
| Pratt Tract | September, 1945 |
| Pennsylvania Tract | March, 1943 |
| Miller Tract | Before 1945 |

Title to all of these tracts was taken in the name of Charles Moser or Charles Moser and Valona Moser. All but the Cugini Tract have been considered as held by the partnership and were included as assets on the partnership books. The partnership has acquired no timber since 1950. The individual taxpayers have acquired no timber since 1956.

"8. On January 1, 1961, the individual taxpayers contracted to sell to the corporation timber on the Cugini Tract for the sum of $25 per thousand feet, log scale. The cost basis for this tract during the period in question was $24.77 per thousand board feet. The contract extended for 10 years and replaced an earlier cutting contract entered into on January 1, 1958, covering the same tract. A copy of the January 1, 1961, contract is attached hereto as Exhibit 1-A. In addition to its obligations under the contract, the corporation bears the expenses of various stand improvement practices on the above tract.

"9. On December 31, 1958, the partnership contracted to sell to the corporation timber located on the Pennsylvania Tract at the rate of $10 per thousand feet, log scale, over a period extending for 10 years. This contract replaced a cutting contract dated January 1, 1954, between the same parties, and covering the same tract. A copy of the December 31, 1958, contract is attached hereto as Exhibit 2-B. In addition to its obligations under the contract, the corporation bears the expenses of various stand improvement practices on the above tract.

"10. On January 1, 1961, the partnership entered into two contracts with the corporation covering the Miller and Pratt tracts and agreed to sell to the corporation timber located on those tracts for the sum of $10 per thousand feet, log scale, over a period of 10 years. Copies of the Pratt and Miller contracts are attached hereto as Exhibits 3-C and 4-D. In addition to its obligations under the contract, the corporation bears the expenses of various stand improvement practices on the above tract.

"11. The corporation maintains its books and files its tax returns upon a fiscal year ending October 31. Pro forma profit and loss statements for the corporation have been prepared from its books for the purpose of correlating its tax years with those of the partnership and the individual taxpayers. The following table sets forth the corporation's actual and pro forma net profits (losses) for the calendar years 1964 through 1967 and the net profits resulting if defendant's adjustments were accepted:

|  | 1964 | 1965 | 1966 | 1967 |
|---|---|---|---|---|
| Actual fiscal year income on state tax returns as filed by Moser Lumber Company | (117,618.70) | None | None | (187,845.15) |
| Fiscal year income before operating loss carry-over | (117,618.70) | 71,418.84 | 94,696.42 | (187,845.15) |
| Deduct income for November and December of preceding year | (67,587.10) | (16,566.77) | (90,563.69) | (63,389.87) |

| | 1964 | 1965 | 1966 | 1967 |
|---|---|---|---|---|
| Add income for November and December of current year | (16,566.77) | (90,563.39) | (63,389.87) | 34,715.27 |
| Income or loss on calendar year basis | (66,598.37) | 2,577.48 | 121,870.24 | (89,740.01) |
| Additions to stumpage costs proposed by State | 71,599.90 | 166,064.42 | 96,476.81 | 42,576.88 |
| Corporation pro forma income or loss after proposed adjustment | (138,198.27) | (168,642.20) | 25,393.43 | (132,316.89) |
| Corporation excise tax paid | 10.00 | 10.00 | 10.00 | 10.00" |

The partnership had a zero basis in the timber which was sold at $10 per thousand board feet, log scale; its cost basis in the timber sold at $25 per thousand board feet was $24.77.

It can be assumed that the plaintiffs were more interested in the federal taxes consequent upon their timber sales, rather than state income taxes. At the time the contracts of sale of timber were executed (December 31, 1958 and January 1, 1961), federal income tax law (IRC § 631(a) and (b)) made provision for capital gains treatment in such sales, for individuals, partnerships and corporations. No such provisions were found in the Oregon income tax law. However, under amended state law, in the case of individuals and partnerships, capital gains treatment was allowed

as to gains received after July 1, 1965. Expert testimony indicated the average value per thousand board feet for the timber sold off the several tracts to the corporation as follows: 1964—$34.80; 1965—$34.06; 1966—$41.12; and 1967—$40. Moser Lumber Company in the years prior to 1964 had sustained substantial operating losses which generally wiped out the capital gains on its timber transactions, and this was the situation when the contracts of 1958 and 1961 were executed. The partnership's sales of timber to its controlled corporation at bargain prices naturally resulted in a diminution of income on the personal income tax returns of the plaintiffs and certainly had no deleterious effect upon the corporation, but did not make its operations profitable. In fact, an increase in timber prices would have enlarged its losses.

After careful study of the testimony presented, the court can find no failure to report income, no distortion or shifting of income or other act, under ORS 314.295 or other statute or rule, to justify additional assessments of income tax for the years in dispute, except for those adjustments for deductions on account of contributions and medical expenses to which the taxpayers have acceded. It is noted that the defendant made no attempt to adjust the corporation's returns. (Cf. Rev Rul 67-79, CB 1967-1, p. 117.)

The defendant has relied upon ORS 314.295, which reads:

"When the tax commission has reason to believe that any taxpayer so conducts a trade or business as either directly or indirectly to distort its true net income and the net income properly attributable to the state, whether by the arbitrary shifting of income, through price fixing, charges for services, by selling the commodities or services in which it

deals at less than the fair price for which they might have been obtained therefor, or buying commodities or services at more than the fair price for which they might have been obtained, or otherwise, whereby the net income is arbitrarily assigned to one or another unit in a group of taxpayers carrying on business under a substantially common control, it may require the facts it considers necessary for the proper computation of the entire net income and the net income properly attributable to the state, and in determining the same the commission shall have regard to the fair profits which would normally arise from the conduct of the trade or business."

■ It will be noted that ORS 314.295 applies to the taxpayer in the conduct of "a trade or business." The partnership, Moser Bros. Lumber Co., existed only to hold investment properties consisting solely of timberlands. The Stipulation of Facts, page 2, line 25, states: "The partnership does not engage in any trade or business." This is equally true of the taxpayers as individuals. The evidence shows that their income is derived from investments in timber and corporate shares, in loans, and modest salaries paid by the corporation. Except for the salary as an employee, the individuals' income would come under the designation of "nonbusiness income" for which subsection (3) of ORS 316.305 provides for income tax deduction. Reg. 316.015(1) (a) states: "For the purposes of the deductions provided for in ORS 316.015, the performance of personal services as an employe does not constitute the carrying on of a trade or business." (As a duly promulgated regulation, not in conflict with a statute, this rule has the effect of law. It differs from the rule followed in federal cases. See *Trent v. Commissioner*, 291 F2d 669 (2d Cir 1961), 61-2 USTC ¶ 9506.)

Neither the statute nor the regulations contain a definition of the oft-used phrase "carrying on any trade or business." As stated in *The Alpha Corp. v. Multnomah Co.*, 182 Or 671, 678, 189 P2d 988 (1948), "the distinction between 'doing business' and 'not doing business', however, is a very fine one." On the basis of the facts before us, neither the plaintiffs as individuals or as partners were engaged in a trade or business. *Wineburg v. Commissioner*, 326 F2d 157 (9th Cir 1963), 13 AFTR2d 323; *Commissioner v. Boeing*, 106 F2d 305 (9th Cir 1939), 23 AFTR 350, *cert den* 308 US 619, 60 S Ct 295, 84 L Ed 517 (1939). See also 4A Mertens, Law of Federal Income Taxation, § 25.08; 10 J Taxation 236 (Apr 1959); 26 J Taxation 78 (Feb 1967). It is concluded that ORS 314.295 is not applicable to this case.

■ Irrespective of ORS 314.295, it is the duty of the Department of Revenue to seek to distinguish tax evasion from tax avoidance and to use appropriate legal tools (such as the "business purpose doctrine" or the "substance versus form" doctrine) to insure that the state obtains the net income taxes intended in the legislative enactment of ORS chapter 316. *Gregory v. Helvering*, 293 US 465, 55 S Ct 266, 79 L Ed 596, 97 ALR 1355 (1932). It is normal in tax administration to regard family transactions with suspicion. See 2 Mertens, Law of Federal Income Taxation, § 18.04. Nevertheless, to find tax avoidance, reality and substance are requisite. For example, compare *Robert P. Crowley*, 34 TC 333 (1960), and *I. L. Van Zandt*, 40 TC 824 (1963), *aff'd* 341 F2d 440 (5th Cir 1965), 15 AFTR 2d 372. In the present case there has been no proof that the net effect—the economic reality—of the transactions described resulted in a distortion through the shifting of income.

■ There is no law which requires a seller to sell at a profit and there is no law that requires an activity to produce taxable income. *Gregory v. Helvering, supra; U.S. v. Cumberland Public Service Co.*, 338 US 451, 70 S Ct 225, 94 L Ed 251 (1950). As was said by the court in the case of *Kuhns et ux v. State Tax Comm.*, 223 Or 547, 560, 355 P2d 249 (1960) : "* * * It is proper for taxpayers to minimize their taxes in every legal way. * * * It is no answer for the Commission, by its own action, to designate something as income when it is not income. The power to substitute its own accounting method for that of the taxpayer does not extend to a power to call something income during a year when it is not income by any accounting method." See also *Tennessee-Arkansas Gravel Co. v. Commissioner*, 112 F2d 508 (6th Cir 1940), 40-2 USTC 595. (But see Rev Rul 67-79, CB 1967-1, p. 117.)

The Department of Revenue's Order I-70-17 must be set aside and its additional assessments for the tax years 1964 to 1967, inclusive, must be abated, except for adjustments respecting 1966 and 1967 relating to charitable contributions and medical deductions.