# IN THE OREGON TAX COURT

Lawrence H. and Linore L. ALLISON et al

*v.*

DEPARTMENT OF REVENUE

(TC 2901)

Kevin O'Connell, O'Connell & Goyak, Portland repre-
sented plaintiffs.

Jerry Bronner, Assistant Attorney General, Department of
Justice, Salem, represented defendant.

Decision for plaintiffs rendered October 30, 1990.

## CARL N. BYERS, Judge.

Plaintiffs are limited partners in a real estate partnership. Defendant adjusted plaintiffs' 1983 and 1984 income tax returns as to partnership expenses and income. Defendant found that the terms of a partnership sale-leaseback were not consistent with economic realities. Defendant required plaintiffs to accrue rental income uniformly over the lease period and adjusted the allowable interest rate on the purchase note. (Stipulation of Facts ¶ 25, at 6.) Plaintiffs appealed to this court.[1] The parties have submitted the case to the court based on stipulated facts, briefs and exhibits.

*The Players*

The facts are complex and reflect the sophisticated planning which created major tax benefits for plaintiffs. The three main individuals in the underlying transactions are Mr. Fuhrer, Mr. Dunn and Mr. Doerr. Together they formed two organizations: Fuhrer, Dunn & Doerr, an Oregon general partnership, in July 1982, and F. D. & D. Realty Corporation, an Oregon corporation, in September 1982.

In October 1982, Morgan Financial Group, Ltd. ("Morgan"), a limited partnership, was organized with F. D. & D. Realty Corporation as the general partner and Mr. Dunn as the initial limited partner. Mr. Dunn was replaced as limited partner by Pacific X-Ray Corporation Profit Sharing Trust (Pacific X-Ray Trust) for the 32-month period discussed below. After that time, Mr. Dunn again became the limited partner in Morgan.

In March 1983, another limited partnership, Devonshire Associates ("Devonshire") was formed. The partnership of Fuhrer, Dunn & Doerr became the general partner of Devonshire and Mr. Dunn was the initial limited partner. Mr. Dunn was later joined by plaintiffs who purchased limited partnership interests.

*The Game Plan*

Sometime in May 1983, Morgan purchased a large retail store and warehouse property in Salem, Oregon, from a

---

[1] Plaintiffs initially appealed the auditor's action to the defendant, but defendant failed to act within 12 months. Plaintiffs elected to deem their appeal denied under ORS 305.560(5) and filed their complaint in Tax Court.

third party. The purchase price was $2,110,000, with $685,000 down and a promissory note of $1,425,000. The note was payable in monthly payments of $17,456 with interest at 14.5 percent per year. The property was purchased subject to a lease by Modern Merchandising, doing business as Jafco, a retail discount store. Under the terms of the lease, Jafco was to pay $21,500 per month plus additional amounts based upon its gross retail sales.

Apparently on the same day, Devonshire in turn purchased the property from Morgan. Devonshire's stated purchase price was $2,436,500, with $695,000 down and a nonrecourse promissory note for $1,741,500. The note provided for two rates of interest; 18 percent for the first 32 months and 14.5 percent for the remainder of the term. However, no monthly payments were required for the first 32 months; the monthly payment for the 33rd month, and every month thereafter, was $34,495 per month. At the same time, Devonshire leased the property back to Morgan. Under the terms of the lease, Morgan paid Devonshire $1,500 per month for the first 32 months and $37,680 each month thereafter.

*The Results*

Devonshire elected to report its income and expenses on the accrual basis. Its interest expense (18 percent yearly on $1,741,500) greatly exceeded its income (lease payments from Morgan of $1,500 per month) for the first 32 months of the transaction. Accordingly, it reported income and interest deductions as follows:

|      | Income   | Interest Deductions |
|------|----------|---------------------|
| 1983 | $10,500  | $191,295            |
| 1984 | $18,000  | $378,090            |

Morgan also elected to report its income and expenses on the accrual basis. On the facts, Morgan would have accrued substantial interest income from Devonshire and received $21,500-plus per month from Jafco. If Morgan's expenses for the 32 months were its $1,500 lease payments to Devonshire and its $17,456 monthly mortgage (note) payments, its income would greatly exceed its expenses.

The beauty of this plan now becomes apparent. Plaintiffs received large interest deductions without actually paying out cash. Further, 99 percent of the large income accrued by Morgan was funneled to Pacific X-Ray Profit Sharing Trust, a tax-exempt entity which pays no income tax.[2]

## Tax Administration

The Internal Revenue Service ("IRS") attempted to challenge plaintiffs' deductions. Undoubtedly because of the unusual payment schedules, it attempted to reallocate the income and issued notices of deficiency. However, the IRS did not follow proper procedures and plaintiffs' federal returns were eventually accepted as filed.

In light of the attempted federal correction, defendant determined to make its corrections. As indicated above, defendant's auditor "leveled out" the interest rate over the life of the note and "leveled out" the lease payments from Morgan to Devonshire over the life of the lease.

## Issues

The two issues presented by these facts are: (1) whether defendant has the authority to do what it did; and (2) if defendant had the authority, did it err in what it did?

## Sources of Authority

Defendant maintains that Oregon's income tax laws incorporate IRC § 482 and IRC § 446(b) by reference. IRC § 482 authorizes the Secretary of the Treasury to adjust the income and deductions between controlled organizations to prevent tax evasion.[3] In a similar vein, IRC § 446(b) authorizes the Secretary to require the taxpayer to use an accounting

---

[2] None of the many possible issues associated with Morgan's end of this transaction are before the court.

[3] IRC § 482 states:

"In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses."

method that clearly reflects income.[4] Defendant contends these sections are not administrative provisions but part of the definition of federal taxable income adopted by ORS 316.048.

■ The court finds that IRC § 482 and IRC § 446(b) are not adopted by reference. Those sections delegate specific power to the Secretary of the Treasury. The term "secretary" cannot be read as "director." Oregon has its own administrative provisions in ORS chapter 314 and ORS 316.215 through 316.227.

■ As expressed in ORS 316.007, the legislative intent is to make Oregon laws "identical in effect" to the IRC with regard to measuring taxable income. This is to be done by "application of the various provisions" of the IRC relating to the definitions of income, etc., including "accounting methods." However, the operative statute is ORS 316.048:

> "The entire taxable income of a resident of this state is his federal taxable income *as defined in the laws of the United States,* with the modifications, additions and subtractions provided in this chapter." (Emphasis added.)

■ No provision gives defendant the administrative authority delegated to the Secretary of the Treasury. The two tax systems are separate. The determination of a taxpayer's federal taxable income by the IRS is not binding on the defendant.[5] The test is not what the IRS determines, but what the IRC defines. *Okorn v. Dept. of Rev.,* 11 OTR 385 (1990).

■ Defendant also claims authority for its action under ORS 314.295 (1983). That statute provides:

> "When the department has reason to believe that any taxpayer so conducts a trade or business as either directly or indirectly to distort its true net income and the net income properly attributable to the state, whether by the arbitrary shifting of income, through price fixing, charges for services,

---

[4] IRC § 446(b) states:

"If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income."

[5] Of course, the legislative intent is that the results be the same, even as to areas of law in conflict. ORS 316.032.

by selling the commodities or services in which it deals at less than the fair price for which they might have been obtained therefor, or buying commodities or services at more than the fair price for which they might have been obtained, or otherwise, whereby the net income is arbitrarily assigned to one or another unit in a group of taxpayers carrying on business under a substantially common control, it may require the facts it considers necessary for the proper computation of the entire net income and the net income properly attributable to the state, and in determining the same the department shall have regard to the fair profits which would normally arise from the conduct of the trade or business."

There is no doubt that ORS 314.295 applies to ORS chapter 316. ORS 314.021. There is also no doubt that its terms are intended to have the same meaning as the IRC. ORS 316.012. That being the case, the first question is whether plaintiffs are engaged in a "trade or business" since ORS 314.295 purports to apply only to a trade or business.[6]

Although the term "trade or business" appears frequently in the IRC and federal income tax cases, it is not defined in the IRC. The distinction between an investment and a trade or business is not clear. *See* Boyle, *What Is A Trade Or Business?*, 39 Tax Lawyer 737 (1986). In the past, owning a single piece of real estate qualified as a trade or business. *Hazard v. Commissioner,* 7 TC 372 (1946). Currently, however, the IRS and the courts examine the extent of the taxpayer's activity. In *Curphey v. Commissioner,* 73 TC 766 (1980), the court applied a facts and circumstance test. *See also* Jackson, *IRS Modifies its Position on a Unit of Rental Property as a Trade or Business,* 62 Journal of Taxation 284 (1985). The facts and circumstance test is applied at the partnership level. In *Campbell v. US,* 813 F2d 694 (5th Cir 1987), 87-1 US Tax Cas (CCH) ¶ 9253, the court found that a limited partnership investing in real estate was not a trade or business.

The court finds that Devonshire was not engaged in a trade or business. Devonshire purchased the property subject

---

[6] Defendant's efforts to equate ORS 314.295 with IRC § 482 are weakened by the many differences between the two statutes. Notably, § 482 governs "organizations" as well as "trades or businesses." Likewise, defendant's arguments as to the scope of ORS 314.295 are weakened by the subsequent legislation enacted by the 1987 legislature granting such powers to defendant. ORS 314.276.

to a net lease and immediately leased the property back to the seller. There is no evidence that it engaged in any activities other than the execution of documents. Devonshire did not engage in any of the usual management activities or decisions involved in a trade or business. This court has previously held that a timber partnership was not engaged in a trade or business. *Moser v. Dept. of Rev.,* 4 OTR 256 (1970).

Nevertheless, as pointed out by this court in *Moser*:

"Irrespective of ORS 314.295, it is the duty of the Department of Revenue to seek to distinguish tax evasion from tax avoidance and to use appropriate legal tools (such as the 'business purpose doctrine' or the 'substance versus form' doctrine) to insure that the state obtains the net income taxes intended in the legislative enactment of ORS chapter 316." *Id.* at 264.

In this light, the court has examined the transactions to determine if such judicial doctrines should apply. The court finds they should not. The sale-leaseback between Morgan and Devonshire was not a sham or an illegal transaction. The involvement of the exempt profit-sharing trust is not the problem. Likewise, the accrual method of accounting used by both parties is not the problem. The problem lies with the terms of the sale and the leaseback. As phrased by defendant:

"The issue is whether the terms of the sale and the terms of the leaseback were *equivalent* to arm's length terms." (Emphasis added.)

The court agrees with defendant's phrasing of the issue. The test is not whether the terms are "typical," but whether they are "equivalent." This test accounts for the fact that arm's-length transactions in the marketplace may take many forms involving a wide variety of schedules and terms.[7]

Defendant contends that the sale-leaseback terms are not equivalent to an arm's-length transaction. Defendant argues:

---

[7] The United States Tax Court has previously used the test of "commercial reasonableness" but defendant's legislative history shows that test is considered "too vague." IRC § 467 enacted in 1984 was intended to deal with the problem of stepped leases. However, that section applies only to leases entered into after June 8, 1984. (*See* Mertens, Law Of Federal Income Taxation, 2 Code Commentary, § 467 at 569.)

"The fair market value of the Jafco property was the amount paid by Morgan to an unrelated seller in an arm's length transaction."

Defendant overlooks the fact that neither Morgan nor Devonshire bought the Jafco property free and clear. Morgan bought the property subject to the Jafco lease. That lease may have had a positive or a negative effect on the value of the fee interest. For example, the assessed value of the property for property tax purposes was $1,474,400 in 1983 and only $1,815,500 in 1987. One might reasonably ask whether Morgan paid more than the unencumbered value of the property because of the Jafco lease.

The question is not what Morgan paid but what Devonshire paid for the property. It is clear that Devonshire agreed to pay more than Morgan did. It also contracted to receive more. Plaintiff's evidence shows that the transaction had a positive net present value. The appraisal report shows a positive value without regard to the tax benefits.[8] A positive net present value was also supported by the study done for plaintiffs' counsel. A positive net present value, a test commonly used in financing, is reasonable evidence that the transaction is equivalent to an arm's-length transaction.

Defendant has submitted no evidence to rebut plaintiffs' evidence. Defendant's actions of leveling the interest rate and the rental income may not have affected the net present value. Defendant did not change the purchase price or the total interest rate, but simply changed the schedule. Thus, defendant has not shown that leveling the interest rates and the rental income results in a higher net present value for the transaction.

Defendant complains "[t]he terms were designed to shift taxable income to a tax exempt profit-sharing trust, and generate interest deductions for Devonshire." That may be true. However, defendant is not attacking the role of the profit sharing trust. Defendant's challenge is to the terms of the transaction from Devonshire's perspective. As long as the law

---

[8] In reviewing the appraisal report, the court believes some questions could be raised as to its accuracy. However, the parties have submitted it as part of the record. The court gives it weight because the plaintiffs apparently relied upon it in making their investments.

permits tax-exempt organizations to participate in such transactions, there is nothing wrong in the parties negotiating terms to their mutual benefit.

> "It is proper for taxpayers to minimize their taxes in every legal way." *Kuhns et ux v. State Tax Com.*, 223 Or 547, 560, 355 P2d 249 (1960).

In summary, the court finds that ORS 314.295 does not apply to the transactions involved. Further, IRC § 482 and § 446(b) are not incorporated by reference in ORS chapter 314 or ORS chapter 316. Defendant has failed to show that the terms of the transaction are not equivalent to an arm's-length transaction. The court finds that the adjustments proposed by the Oregon Department of Revenue are in error. Plaintiffs correctly reported their income tax liabilities in 1983 and 1984 relative to the Devonshire income and expenses. In accordance with the stipulation of the parties, costs are awarded to neither party.