THE PEOPLE OF THE STATE OF NEW YORK ex rel. BARCALO MANUFACTURING COMPANY, Appellant, *v.* WALTER H. KNAPP et al., Constituting the State Tax Commission, Respondents.

**Tax Law — franchise tax — in arriving at net income of a manufacturing corporation no deduction is to be made on account of excess profits tax paid by the corporation to the United States.**

In fixing the net income of a manufacturing corporation for the purposes of the state franchise tax, " which income is presumably the same as the income upon which such corporation is required to pay a tax to the United States," no deduction is to be made of any excess profits tax which was included by the company in its return to the Federal government. (Tax Law, art. 9-A; L. 1917, ch. 726; L. 1918, ch. 276.) The term " net income " as used in the Federal statutes does not exclude the excess profits tax, but simply allows its deduction, by those who pay it, from their net income in arriving at the amount upon which'their income tax is to be assessed. (Federal Statutes of 1916, ch. 463; Federal Statutes of 1917, ch. 63.)

*People ex rel. Barcolo Mfg. Co.* v. *Knapp,* 187 App. Div. 89, affirmed.

(Argued June 5, 1919; decided July 15, 1919.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered April 14, 1919, which dismissed a writ of certiorari and confirmed a determination of the state tax commissioners in assessing a franchise tax against the relator.

The facts, so far as material, are stated in the opinion.

*Elon R. Brown* and *Edward H. Letchworth* for appellant. If the State Franchise Tax Law is to be applied to the provisions of the Federal act of October 3, 1917, as indicated by the ruling of the state tax commission refusing to deduct income taxes paid within the year, it follows that the determination of the tax commission refusing to credit the excess profits taxes assessed for

the year, as required by the same act, is erroneous and must be reversed. (*Am. Printing Co.* v. *Comm.*, 231 Mass. .237; *People ex rel.* v. *Comrs. of Taxes*, 95 N. Y. 554.) The excess profits tax must be deducted from the corporation's income in fixing the net income which is the basis of the state franchise tax, even though the state franchise tax continue to rest on the Federal act of September 8, 1916; and such deduction should be for the year for which the excess profits tax is assessed. (*Am. Printing Co.* v. *Commonwealth*, 231 Mass. 237.) Chapter 726 of the Laws of 1917, as amended, will be interpreted, so far as possible, to produce an equality of taxation on the corporations affected; and this principle will be applied both as to the terms of the act itself, so far as they are independent of Federal legislation, and the relation of the state act to the Federal acts. (*People ex rel.* v. *Commissioners of Taxes*, 95 N. Y. 554; *People ex rel.* v. *Lacombe*, 99 N. Y. 43; *Adee* v. *Nassau Electric R. R. Co.*, 72 App. Div. 404; *People* v. *Hilliard*, 85 App. Div. 507; *Staten Island Water Co.* v. *City of New York*, 144 App. Div. 318; *Roesenplaenter* v. *Roessle*, 54 N. Y. 262; *Donaldson* v. *Wood*, 22 Wend. 397; *Osborn* v. *N. Y., N. H. & H. R. R. Co.*, 40 Conn. 491; *East Livermore* v. *L. F. Trust & Banking Co.*, 103 Me. 418; *People* v. *Roberts*, 32 App. Div. 113.) The Appellate Division is in error in holding that the state Franchise Tax Law imposes a franchise tax based upon the "entire net income" of the corporation, instead of upon the income "upon which such corporation is required to pay a tax to the United States." (*People ex rel.* v. *Comrs. of Taxes*, 95 N. Y. 555; *Matter of Harbeck*, 161 N. Y. 211; *Sarlls* v. *U. S.*, 152 U. S. 570; *Matthews* v. *McStea*, 91 U. S. 7; *Lawrence* v. *People*, 188 Ill. 407; Endlich on Interp. of Statutes, §§ 43, 44, 47; *U. S.* v. *Freeman*, 3 How. [U. S.] 556; *Tiger* v. *Western Investment Co.*, 221 U. S. 286.)

# 66 People ex rel. Barcalo Mfg. Co. v. Knapp.

[227 N. Y.]         Points of counsel.         [July,

*Charles D. Newton, Attorney-General (C. T. Dawes* of counsel), for respondents. Our state legislation of 1918 did not alter the rule that the net income taxable under article 9-A was the figure " shown " or " reported " as net income in the last returns made to the United States. (*People ex rel. Parr* v. *Parr,* 121 N. Y. 679.) The sole purpose of the state legislation of 1918 amending article 9-A so as to make the net income taxable under our law " presumably " the same as the net income taxed by the United States and permitting corrections by the state tax commission for fraud, evasion or errors, was not to require the state tax commission to amend in every instance as a matter of law the figure showing the net income reported to the United States by deducting the income taxes paid and crediting the excess profits taxes paid to the Federal government, but simply to protect the constitutionality of our statute by making the assessment of net income under our state law a proceeding separate from the assessment of net income under the Federal laws. (*Stuart* v. *Palmer,* 74 N. Y. 183; *Overing* v. *Foote,* 65 N. Y. 263; *People* v. *Purdy,* 196 N. Y. 270; *People ex rel. Scott* v. *Pitt,* 169 N. Y. 521; *Ringlander* v. *Star Co.,* 98 App. Div. 101; 181 N. Y. 531.) The amendments of 1918 did not cut away the basis of assessment. Our state franchise tax was still to be computed on the " net income " of the corporation for the " preceding " year as " returned " to the Federal government. Errors or inaccuracies of fact could be changed (such changes as the Federal administrative authorities themselves could make), but the underlying method of arriving at net income found in the Federal laws which set forth specifically the deductions permitted from gross income, was still retained by our state law. Whatever was " net income " and was reported as such under Federal laws was basically the " net income " under our state law. (*Trustees of Village of Saratoga* v. *Saratoga Gas Co.,* 191 N. Y. 123; *People* v. *Klinck Packing Co.,* 214 N. Y. 131;

*People* v. *Beakes Dairy Co.*, 222 N. Y. 416.) It is not the general policy of the state to permit the deduction of Federal taxes before the computation of a state tax. (*Matter of Sherman*, 179 App. Div. 497; affd., 222 N. Y. 540; *Matter of Bierstadt*, 178 App. Div. 836; *Matter of Gihon*, 169 N. Y. 443; *Coe* v. *Errol*, 116 U. S. 517.) Chapter 628 of the Laws of 1919 clarified the expression " entire net income " so as to remove any doubt as to its meaning. The amendment was not a legislative declaration that the statute previous to 1919 meant something else. (*People ex rel. M. L. Ins. Co.* v. *Supervisors*, 16 N. Y. 424; *Roberts* v. *State of New York*, 30 App. Div. 106; *Rand* v. *Massachusetts Benefit Assn.*, 18 Misc. Rep. 336; *Weisberg* v. *Weisberg*, 112 App. Div. 231; *Sweet* v. *City of Syracuse*, 17 App. Div. 63.)

*Ernest G. Metcalfe* for William G. Wrigley, Jr. The state cannot in any manner, direct or indirect, nor by any name it sees fit to call the method, lay a tax on that which has become the property of or which the United States is entitled to receive by way of taxes assessed and payable. (*Van Brocklin* v. *State of Tennessee*, 117 U. S. 151.) The state uses the statement of net income as a basis or means of measuring the value of the franchise and a reduction in net income occurring after the making of the report to the United States or the state, caused by duly empowered legal authority, reduces the basis of computation of the value of the franchise, and must be considered and allowed for in the computation of the tax. (*People ex rel. Union Trust Co.* v. *Coleman*, 126 N. Y. 433.) The United States, having prior to the action of the state tax commission, taken a portion of what was net income, then, to the extent taken, the income ceased to be the property of the corporation, but immediately vested in the United States although payment was deferred and the state could not thereafter by any direct or indirect method tax the property of the United

68. People ex rel. Barcalo Mfg. Co. *v.* Knapp.

[227 N. Y.]                    Opinion, per Collin, J.                    [July,

States nor require the corporation to pay a tax on the property of the United States. (*G. H. & S. A. Ry. Co. v. State*, 210 U. S. 217; *People ex rel. Mutual Trust Co. v. Miller*, 177 N. Y. 51; *People ex rel. J. W. S. Co. v. Tax Comrs.*, 196 N. Y. 39; *People ex rel. M. Ry. Co. v. Woodbury*, 203 N. Y. 231.)

Collin, J.   The relator, a domestic manufacturing corporation, was by statute (Article 9-A of the Tax Law; Cons. Laws, chapter 60) obligated to pay for the tax year beginning November first, 1918, a franchise tax, " for the privilege of exercising its franchises in this state in a corporate or organized capacity," at the rate of three per centum of its net income or part thereof taxable within the state, determined as provided in the article (Sections 209, 215).   Pursuant to the statute it duly transmitted to the state tax commission the report prescribed by the section 211.   The report stated: " Net income for the calendar year ending December 31, 1917, as determined by the United States Treasury Department, $204,172.75.   *   *   *   The net income of $204,172.75, shown on the attached return, is the income upon which such corporation is required to pay a tax to the United States, and is computed as follows:

| Total Net Income | $256,201 75 |
| Less Excess Profits Tax | 52,029 00 |
| Net income subject to tax by United States | $204,172 75 |

Said amount of $204,172.75 is the only income of said corporation for said year 1917 upon which it is required to pay a tax to the United States."   The state tax commission computed the tax to be paid by the relator upon the basis of its net income as being $256,201.75.   The refusal to credit upon this amount of income the amount of the excess profits tax assessed by the United States,

namely, $52029.00, constitutes the grievance of the relator.

On June 4, 1917, article 9-A (Laws of 1917, chapter 726, entitled "An act to amend the tax law, in relation to a franchise tax on manufacturing and mercantile corporations, and making appropriations for administration expenses"), in its original form took effect. On April 19, 1918, chapter 276 of the Laws of 1918, entitled "An act to amend the tax law, in relation to a franchise tax on manufacturing and mercantile corporations," took effect. It provided in effect that its amendments should take effect as of the date of the original act, June 4, 1917. Article 9-A as amended obligated the relator (and other domestic manufacturing corporations) to pay the annual franchise tax, to be computed by the tax commission upon the basis of "its net income" for the year, as thereinafter provided "which income is presumably the same as the income upon which such corporation is required to pay a tax to the United States." (Section 209.) The rate of the tax is three per centum "of the net income" "determined as provided by this article." (Section 215.) "The corporations shall on or before each July first, or within thirty days after the making of its report of net income to the United States treasury department" for the year, transmit to the tax commission a verified report, of an elaborate, prescribed form and substance relative to its net income, containing as an item: "The amount of its net income for its preceding fiscal or the preceding calendar year as shown in the last return of annual net income made by it to. the United States treasury department, and if the corporation shall claim that such return is inaccurate the amount claimed by it to be the net income for such period." The commission may require further reported information necessary for the computation of the tax. (Sections 211, 213.) "If the entire business of the corporation be transacted within the state, the tax imposed

by this article shall be based upon the entire net income of such corporation for such fiscal or calendar year as returned to the United States treasury department, subject to any correction thereof for fraud, evasion or error, ascertained by the state tax com- mission." (Section 214.) If an obligated corporation does not make the report the commission may make an estimate of its net income. (Section 217.) On or before the first day of November in each year the commission shall compute the tax and notice the same to the state comptroller for collection. (Section 219-a.) " If the amount of the net income for any year of any corporation taxable under this article as returned to the United States treasury department is changed or corrected by * * * competent authority, such corporation, within ten days after the receipt of notice of such change or correction, shall make return under oath or affirmation to the tax commission of such changed or corrected net income, and shall concede the accuracy of such determination or state wherein it is erroneous. The tax commission shall ascertain, from such return and any other information in the possession of the commission, the net income of such corporation for the fiscal or calendar year for which such change or correction has been made by such * * * authority. * * * The tax commission shall thereupon reaudit and restate the account of such corporation for taxes based upon the net income for such fiscal or calendar year, such reaudit to be according to the net income so ascertained by the tax commission. * * *." (Section 219-d.)

The language of the statute expresses clearly the legislative intentions and enactments: The tax imposed was upon the entire net income of each year. This conclusion is repetitiously expressed and is indubitable. A definition of the words " net income " was not incorporated in the statute. The meaning given and characterizing them through and as used in the Federal

statutes was their meaning as used in the state statute.
The conditions and limitations, expressed in the Federal
statutes, creating their office and effect under those
statutes are adopted by the state statute.   It used the
term net income as established by the Federal statutes.
While the net income is declared by the statute to be
presumably the same as the income upon which the
corporation is required to pay a tax to the United States,
it is clear and certain that within the legislative intention
the net income of the statute is that returned or reported
to the United States in accordance with the Federal
statutes.   While the basis for the computation of the
commission is the returned net income under the Federal
statutes, the commission is free to fix, from the return
and any other information, the true and correct amount
of the net income, but not to change the nature or
definition of it.   The language of section 5 of chapter
276 of the Laws of 1918, which I have already stated,
makes certain and mandatory the conclusion that the
relator is governed and obligated by the provisions of
article 9-A of the Tax Law existing and in force on
November first, 1918.   It is equally certain that those
provisions were to be read and enforced, in so far as
Federal statutes were involved, with the Federal statutes
existing and in force on that date.   In case section 209
of article 9-A had originally read as chapter 276 of the
Laws of 1918 framed it, the net income returned to the
United States in any year, if true and correct, would,
in virtue of the statute, be the net income for that year
under the state statute.   The tax commission was given
no power to change or correct it other than to make it
as established by the then existing Federal statute, true
and correct in amount.   To hold otherwise would be to
pervert legislative intention.

It remains for us to determine whether or not the
term net income, within the meaning and effect of the
Federal statutes, excludes the amount of any excess

72    People ex rel. Barcalo Mfg. Co. *v.* Knapp.

[227 N. Y.]            Opinion, per Collin, J.            [July,

profits tax imposed by act of Congress and assessed for the year upon the taxpayer. Under the language of those statutes the problem is not difficult; the solution is not uncertain. It should be borne in mind that we are to reach the correct comprehension of the net income which those statutes require to be returned or reported to the United States treasury department, and not of the amount those statutes require the tax to be paid upon. The Federal statutes define the taxable net income as including gains, profits and incomes from manifold sources, subject only to such exemptions and deductions as they allow. (Act of 1916, ch. 463 [39 U. S. Stat. 756, 757], §§ 1 (a), 2; act of 1917, ch. 63 [40 U. S. Stat. 329], tit. 12, § 1200.) They state the exemptions they allow (Act of 1916, ch. 463 [39 U. S. Stat. 758, 761, 766], §§ 4, 7, 11; act of 1917, ch. 63 [40 U. S. Stat. 329], tit. 12, § 1200), and the deductions. (Act of 1916, ch. 463 [39 U. S. Stat. 759, 767], §§ 5, 12; act of 1917, ch. 63 [40 U. S. Stat. 330, 331, 335], §§ 1201, 1203, 1208.) Neither the exemptions nor the deductions include the income taxes or the excess profits tax. " The tax shall be computed upon the net income, as thus ascertained." (Chapter 463, §§ 8, 13; act of 1917, ch. 63 [40 U. S. Stat. 331, 335], §§ 1204, 1208.) The sections I have referred to have no relation to the excess profits tax. They relate to the income tax or the war income tax. Within them or within the other sections relating to those taxes it is not enacted that the net income to be returned is affected by or dependent in any way upon those taxes or the excess profits tax. Title 2 of chapter 63 of the act of 1917 (40 U. S. Stat. 302–308) provides for the excess profits tax. The discussion does not require consideration of it. The act of 1917 amended title 1 of the act of 1916 by adding to part 3, relating to general administrative provisions, six new sections (Act of 1917, ch. 63 [40 U. S. Stat. 336], § 1211), of which section 29 is: " That in assessing income tax the net income

embraced in the return shall also be credited with the amount of any excess profits tax imposed by act of Congress and assessed for the same calendar or fiscal year upon the taxpayer, and, in the case of a member of a partnership, with his proportionate share of such excess profits tax imposed upon the partnership." This provision does not affect the definition of the words " net income " as established by the statute. It provides that in the case of the corporation, partnership or individual liable for the excess profits tax, the net income returned to the United States shall, in assessing the income tax upon that net income, be credited with the amount of the excess profits tax. The net income is not changed. A part of it equal to the sum of the excess profits tax is not, in such case, taxed. The corporations, partnerships or individuals who are not assessed the excess profits tax are assessed upon the net income for the income taxes. The net incomes of those who were and who were not assessed were ascertained under the same enactments and based upon identical specifications.

The return by the relator of its annual net income to the United States treasury department showed the annual total net income to be $256,201.75. It was not inaccurate. The statute did not authorize the state tax commission to credit that net income with the sum of the excess profits tax assessed upon the relator or to assess the franchise tax upon the sum of it exceeding that tax.

The order should be affirmed, with costs.

CUDDEBACK, CARDOZO, POUND and MCLAUGHLIN, JJ., concur; HISCOCK, Ch. J., and ANDREWS, J., dissent.

Order affirmed.