MATTER OF THE ESTATE OF ROY N. ARMSTRONG, DECEASED. STATE OF MONTANA EX REL. TAYLOR McNIVEN ET AL., RESPONDENTS, v. THE STATE BOARD OF EQUALIZATION ET AL., APPELLANTS.

No. 9570.

Submitted January 20, 1958. Decided March 28, 1958.

323 Pac. (2d) 596.

Arnold H. Olsen, Atty. Gen., William F. Crowley, Asst. Atty. Gen., H. O. Vralsted, Sp. Asst. Atty. Gen., Harold J. Pinson-

eault, Asst. Tax Counsel, for Board of Equalization, Missoula, for appellants.

H. O. Vralsted, Sp. Asst. Atty. Gen., Tax Counsel, Board of Equalization, argued orally for appellants.

Fred L. Gibson, Livingston, Ben E. Berg, Jr., Bozeman, Hugh D. Galusha, Jr., Helena, for respondents.

Ben E. Berg, Jr., Bozeman, and Hugh D. Galusha, Jr., Helena, argued orally for respondents.

THE HONORABLE E. E. FENTON, District Judge, sitting in place of MR. JUSTICE BOTTOMLY:

The State Board of Equalization has appealed herein from a judgment annulling its assessment of income tax upon income of Roy N. Armstrong, deceased, for the period from January 1, 1951, to the date of his death, July 7, 1951. The assessment by the Board was computed pursuant to R. C. M. 1947, sec. 84-4905 (subsequently repealed), requiring that the final closing return of a decedent be made on an inventory basis and providing that the value of the closing inventory shall be the same as the value fixed for inheritance tax purposes.

The lower court held that the above-cited statute, insofar as it requires that unsold cattle included in the closing inventory of a decedent shall be treated as taxable income, is violative of the Constitution of Montana. To the contrary, the holding of this court in State ex rel. Anderson v. State Board of Equalization, ...... Mont. ......, 319 Pac. (2d) 221, established the constitutionality of the statute in question.

While conceding that the constitutional issue has thus been resolved against them, the respondents now contend that 156 head of breeding animals, valued for inheritance tax purposes at $55,700, should be excluded from the closing inventory and thereby freed from the method of taxation approved in State ex rel. Anderson v. State Board of Equalization, supra.

During 1951, the tax year in question, R. C. M. 1947, sec. 84-4905 (before the 1955 amendment) provided:

330

"Whenever, in the opinion of the board, the use of inventories is necessary in order to determine clearly the income of any taxpayer, inventories shall be taken by such taxpayer, upon such basis as the board may prescribe, *conforming as nearly as may be to the best accounting practice in the trade or business* and most clearly reflecting the income, except that the final closing return of a decedent must be made on an inventory basis regardless of the method previously used in calculating net income. The value of the closing inventory shall be the same as the value fixed for inheritance tax purposes regardless of the method previously used by the taxpayer in valuing his inventories * * *." Emphasis supplied.

Specifically, it is contended herein that the "best accounting practice in the trade or business" dictates that breeding animals be treated as capital assets not properly includable in the taxpayer's inventory of property held for sale. In support of this contention respondents cite the fact that breeding animals are subject to capital gains treatment under Federal income tax laws and decisions.

In the annotation, "Income Tax—Property Held for Sale," 46 A. L. R. (2d) 719, it is noted that prior to the 1951 amendment of the Internal Revenue Code of 1939 extensive controversy existed as to whether livestock held for draft, breeding or dairy purposes was held primarily for sale to customers in the ordinary course of their business, and as to whether gains resulting from the sale or exchange of such property were entitled to capital gains treatment under Section 117(j), 26 U.-S.-C., sec. 117(j), providing for the taxation of capital gains at a reduced rate. This controversy was settled when the Revenue Act of 1951 added to the definition of "property used in the trade or business," in Section 117(j) of the Internal Revenue Code of 1939, the following language, now found under the heading: "Special Rules for Determining Capital Gains and Losses," in section 1231 of the Internal Revenue Code of 1954, 26 U. S. C. Sec. 1231:

"Such term also includes livestock, regardless of age, held by the taxpayer for draft, breeding, or dairy purposes, and held by him for 12 months or more from the date of acquisition. * * *"

Respondents contend, in effect, that "the best accounting practice in the trade or business" is that which secures to the taxpayer the benefit of the tax treatment accorded by this last-quoted statute, and by Federal decisions. In short, the Federal law is claimed to be controlling in respect to a tax imposed by a state law.

In Corn Products Refining Co. v. Commissioner of Internal Revenue, 350 U. S. 46, 76 S. Ct. 20, 24, 100 L. Ed. 29, quoting from Burnet v. Harmel, 287 U. S. 103, at 106, 53 S. Ct. 74, 77 L. Ed. 199, it is stated that the preferential treatment provided by section 117 of the Internal Revenue Code of 1939 "was intended 'to relieve the taxpayer from * * * excessive tax burdens on gains resulting from a conversion of capital investments, and to remove the deterrent effect of those burdens on such conversions'." No such intent is to be found in our state income tax law as it existed in 1951. In particular, no preferential treatment was accorded by any Montana statute to gains from the sale or exchange of breeding animals or any other property held for productive use in a trade or business. With certain exceptions not applicable here the law then in effect provided that, "Upon the sale or exchange of property the entire amount of the gain or loss * * * shall be recognized * * *." R. C. M. 1947, sec. 84-4934.

With respect to capital gains, the Montana income tax law in force in 1951 bore no likeness to the Federal law. Resort to the Federal statutes or decisions is therefore of no aid in the interpretation of the state statute.

We find no provision in our income tax law in force in 1951 which makes any mention of livestock, whether held for breeding purposes or otherwise, or which in any manner indicates that income derived from livestock should be treated as anything other than ordinary income. To uphold the respond-

ents' contention would require an interpretation, amounting to judicial legislation, adding to our statutes a provision granting a special tax status to breeding animals. We have neither the power nor the right so to do.

"To guard against judicial legislation and the usurpation of legislative functions the state legislative assembly enacted R. C. M. 1947, sec. 93-401-15, which provides: 'In the construction of a statute * * * the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted * * *'." Wilson v. Wilson, 128 Mont. 511, 521, 278 Pac. (2d) 219, 224.

It is argued by respondents' supplemental brief that because Chapter 260, Session Laws of 1955, now relates our state income tax to the Federal Internal Revenue Code, we should decide the case at bar in accordance with the Federal statutes and decisions. We find no language in the 1955 Act warranting this retrospective application of its provisions to the tax year of 1951. See State ex rel. Whitlock v. State Board of Equalization, 100 Mont. 72, 45 Pac. (2d) 684.

The final closing inventory provided for by R. C. M. 1947, sec. 84-4905, must be taken upon a basis "conforming as nearly as may be to the best accounting practice in the trade or business *and most clearly reflecting the income. * * *"* Emphasis supplied. The income here in question must be treated not as capital gain but as ordinary income. In order to most clearly reflect that ordinary income the Board rightly caused the taxpayer's breeding animals to be included in the final closing inventory.

The judgment of the district court is reversed with directions to enter judgment for the appellant.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES CASTLES, ANGSTMAN and ADAIR, concur.