741 A.2d 1130

**COMPTROLLER OF the TREASURY**

v.

**GANNETT CO., INC.**

**No. 49, Sept. Term, 1999.**

Court of Appeals of Maryland.

Dec. 9, 1999.

700

John K. Barry (Gerald Langbaum, Asst. Atty. Gen., and J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Annapolis, for appellant.

Kenneth H. Silverberg (Christian M. McBurney, Nixon, Hargrave, Devans & Doyle, LLP, on brief), Washington, DC, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

CATHELL, Judge.

The Comptroller of the Treasury, appellant, appeals a ruling from the Circuit Court for Montgomery County that appellant lacked the authority to assess additional income tax against Gannett Company, Inc., appellee, by imputing interest income

from certain intercompany debt not reported on appellee's federal income tax returns. We agree with the circuit court and, accordingly, affirm the lower court.

## I. Background

Appellee is a Delaware corporation, headquartered in Virginia, with computer support facilities in Silver Spring, Maryland. A leading corporation in the media industry, appellee is the parent company to many wholly-owned subsidiary media companies. Appellee maintains four centralized, intercompany accounts with its subsidiaries.[1] The subsidiaries deposit their proceeds in the appropriate account and then draw on that account to pay their related individual expenses. If a subsidiary deposits more proceeds than it withdraws, appellee maintains an interest-free debit with the subsidiary. If the subsidiary spends more money than it deposits, appellee maintains an interest-free credit with the subsidiary. For the tax years 1990–92, appellee maintained with its subsidiaries a credit in three of the four intercompany accounts. The parties stipulated to the Maryland Tax Court below, in writing, that these credits were a form of interest-free debt. Appellant claims that, under two federal tax code provisions, it may assess income tax against these credits by imputing interest income from them.

---

1. The four intercompany accounts were labeled and described functionally by Gannett as follows: Corporate (the most significant financially of the four, this account was used principally as a cash management program wherein the subsidiaries would make daily transfers of any excess cash into the account and Gannett would transfer cash out to any subsidiary needing additional cash; a large portion of the balance in this account at any given time also included amounts reflecting accounting adjustments related to the asset value of previously unrelated companies acquired by Gannett), Gannett Supply (this account was used for the centralized purchasing of newsprint and other supplies and their transfer to the respective subsidiary or to Gannett as needed), USA Today (composed principally of receipts from the sale of USA Today newspapers by Gannett's publisher/subsidiary to Gannett or other subsidiaries), and Other (generally reflecting transfers of property between Gannett and its consolidated subsidiaries; this account was the only one reflecting negative balances for the period 1990–92).

The first provision, I.R.C. § 482 (1999), states in relevant part:

### § 482. Allocation of income and deductions among taxpayers

In any case of two or more ... businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such ... businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such ... businesses.

The second provision, I.R.C. § 7872 (1999), states in relevant part:

### § 7872. Treatment of loans with below-market interest rates

**(a) Treatment of gift loans and demand loans.—**

**(1) In general.**—For purposes of this title, in the case of any below-market loan to which this section applies and which is a gift loan or a demand loan, the foregone interest shall be treated as—

**(A)** transferred from the lender to the borrower, and

**(B)** retransferred by the borrower to the lender as interest.

. . . .

**(b) Treatment of other below-market loans.—**

**(1) In general.**—For purposes of this title, in the case of any below-market loan to which this section applies and to which subsection (a)(1) does not apply, the lender shall be treated as having transferred on the date the loan was made (or, if later, on the first day on which this section applies to such loan), and the borrower shall be treated as having received on such date, cash in an amount equal to the excess of—

**(A)** the amount loaned, over

(B) the present value of all payments which are required to be made under the terms of the loan.

**(2) Obligation treated as having original issue discount.**—For purposes of this title—

**(A) In general.**—Any below-market loan to which paragraph (1) applies shall be treated as having original issue discount in an amount equal to the excess described in paragraph (1).

**(B) Amount in addition to other original issue discount.**—Any original issue discount which a loan is treated as having by reason of subparagraph (A) shall be in addition to any other original issue discount on such loan (determined without regard to subparagraph (A)).

**(c) Below-market loans to which section applies.**—

**(1) In general.**—Except as otherwise provided . . . this section shall apply to—

. . . .

**(C) Corporation-shareholder loans.**—Any below-market loan directly or indirectly between a corporation and any shareholder of such corporation.

**(D) Tax avoidance loans.**—Any below-market loan 1 of the principal purposes of the interest arrangements of which is the avoidance of any Federal tax.

**(E) Other below-market loans.**—To the extent provided in regulations, any below-market loan which is not described in subparagraph (A), (B), (C), or (F) if the interest arrangements of such loan have a significant effect on any Federal tax liability of the lender or the borrower.

. . . .

**(h) Regulations.**—

**(1) In general.**—The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the purposes of this section, including—

. . . .

**(C)** regulations exempting from the application of this section any class of transactions the interest arrange-

ments of which have no significant effect on any Federal tax liability of the lender or the borrower.

For the tax years in question, 1990–92, appellee, as it was allowed to do, filed a consolidated federal tax return on behalf of itself and all of its subsidiaries with the Internal Revenue Service (IRS). Appellee did not report the intercompany account credits on its federal tax return because any interest income that could have been imputed from the credits under I.R.C. §§ 482 and 7872 would have been offset by the reciprocal imputed interest deduction attributed to each subsidiary. In other words, any interest income appellee would have had to report on its consolidated federal tax return would presumably have been eliminated by any interest expense deduction that appellee could have claimed on behalf of its subsidiaries. The IRS, which conducted an audit on other grounds, accepted the returns as filed.[2]

The Maryland income tax code bases "the Maryland modified income of a corporation" on "the corporation's federal taxable income for the taxable year as determined under the Internal Revenue Code...." Md.Code (1988, 1997 Repl.Vol.), § 10–304(1) of the Tax–General Article.[3] The Maryland Code, however, does not allow related corporations to file consolidated returns. *See id.* § 10–811. The Maryland income tax code thus required appellee to base its Maryland modified income on the portion of its reported federal consolidated taxable

---

**2.** The parties debate the effect of the IRS audit. The audit is irrelevant to the case *sub judice* for two reasons. First, the IRS was concerned with an I.R.C. provision different from the provisions involved in this case. Second, as noted, *supra*, the parties submitted a written stipulation to the Maryland Tax Court in which appellee admitted the intercompany credits constituted debt for the purposes of assessing Maryland income tax. In that stipulation, appellee reserved the right to appeal appellant's authority to impute taxable interest income from those debts, but bound itself not to appeal whether the credits constituted debt. What *is* relevant to this case, as explained, *infra*, is the final taxable income figure accepted by the IRS on the federal tax return.

**3.** All statutory references shall be to the 1997 Replacement Volume of the Tax–General Article, as amended in the 1998 Cumulative Supplement, unless otherwise indicated.

income earned by it in Maryland. Because appellee did not report the three intercompany account credits on its consolidated federal return, it did not report them on its individual Maryland tax form.

Appellant alleges that not reporting the intercompany credits allowed appellee to understate its portion of the consolidated federal taxable income on its separate Maryland income tax return.[4] Believing that I.R.C. §§ 482 and 7872 allowed it to impute interest income from appellee's intercompany credits, appellant recalculated appellee's Maryland modified income. It originally assessed $2,216,066 in additional income tax against appellee. Appellee sought a revision of the assessment before an administrative hearing officer, who upheld the assessment but reduced it to $1,279,785. Appellee appealed that ruling to the Maryland Tax Court, arguing that the intercompany account credits were not debt and that, if they were, appellant had no authority to impute interest income from that debt unless the IRS had required it on appellee's federal tax return. The Maryland Tax Court disagreed and affirmed. Appellee sought judicial review in the Circuit Court for Montgomery County, which reversed, ruling that appellant did not have the authority to impute interest income based on the I.R.C. provisions. Appellant appealed that ruling to the Court of Special Appeals and this Court granted a writ of certiorari prior to that court's hearing the matter. Appellant presents the following question:

> Does the Maryland requirement of a separate corporate tax return require a restatement of federal taxable income from the amount that appears on a consolidated return to the amount required by I.R.C. § 482 or § 7872 for taxpayers that file a separate federal return?

Appellee presents a slightly different version of the question:

> Did the Circuit Court for Montgomery County correctly rule that the Tax Court erred as a matter of law in holding

---

4. Not all of the subsidiaries benefitting from the interest-free debts filed tax returns in Maryland. As a result, appellee's failure to impute interest from its credits on its Maryland tax return produced a net loss of taxable income for the State.

that [appellant] had authority under Maryland's tax laws to impute interest income on intercompany account balances that [appellee] maintained with its subsidiaries?

## II.   Discussion

### A.   Standards of Review

■   The facts of this case generally are not in dispute; the issue before us is strictly a question of law.   "The lower court's interpretations of law enjoy no presumption of correctness on review:  the appellate court must apply the law as it understands it to be."   *Rohrbaugh v. Estate of Stern,* 305 Md. 443, 447 n. 2, 505 A.2d 113, 115 n. 2 (1986) (citing *Elza v. Elza,* 300 Md. 51, 55–60, 475 A.2d 1180 (1984); *Davis v. Davis,* 280 Md. 119, 124–31, 372 A.2d 231, *cert. denied,* 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977); *Sica v. Retail Credit Co.,* 245 Md. 606, 611–21, 227 A.2d 33 (1967)); *see also Cassell v. Pfaifer,* 243 Md. 447, 453, 221 A.2d 668, 672 (1966) ("The trial court's conclusions of law based upon the facts . . . are reviewable by this Court."); *Pallace v. Inter City Land Co.,* 239 Md. 549, 558, 212 A.2d 262, 266 (1965) ("The conclusions of law based upon the facts are reviewable by this Court."); *Porter v. Schaffer,* 126 Md.App. 237, 259, 728 A.2d 755, 766 ("[P]ure conclusions of law are not entitled to any deference." (quoting *Oliver v. Hays,* 121 Md.App. 292, 306, 708 A.2d 1140 (1998)) (alteration in original)), *cert. denied,* 355 Md. 613, 735 A.2d 1107 (1999).   Regarding questions of law answered by the Maryland Tax Court, we have said that "a reviewing court is under no statutory constraints in reversing a Tax Court order which is premised solely upon an erroneous conclusion of law." *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 834, 490 A.2d 1296, 1301 (1985) (citing *Supervisor of Assessments v. Carroll,* 298 Md. 311, 469 A.2d 858 (1984); *Comptroller v. Mandel, Lee, Goldstein, Burch Re-election Comm.,* 280 Md. 575, 374 A.2d 1130 (1977)).

■   When ambiguities arise in construing tax statutes, Maryland courts must interpret tax code provisions that aid in determining taxable income in the taxpayer's favor.   We noted

in *Comptroller v. John C. Louis Co.*, 285 Md. 527, 539, 404 A.2d 1045, 1053 (1979), that

> when ... the applicability of a tax statute and not a tax exemption is being construed, it is the established rule not to extend the tax statute's provisions by implication, beyond the clear import of the language used, to cases not plainly within the statute's language, and not to enlarge the statute's operation so as to embrace matters not specifically pointed out. In case of doubt, tax statutes are construed "most strongly against the government, and in favor of the citizen." *Comptroller of the Treasury v. Mandel Re–Election Comm.*, 280 Md. 575, 580, 374 A.2d 1130, 1132 (1977); *Comptroller of the Treasury v. M.E. Rockhill, Inc.*, 205 Md. 226, 234, 107 A.2d 93, 98 (1954).

*See also Scoville Serv., Inc. v. Comptroller*, 269 Md. 390, 396, 306 A.2d 534, 538 (1973) ("[W]here there is doubt as to the scope of the statute, ... it should be construed most strongly in favor of the citizen and against the state.") (citing *F. & M. Schaefer Brewing Co. v. Comptroller*, 255 Md. 211, 257 A.2d 416 (1969); *McConihe v. Comptroller*, 246 Md. 271, 228 A.2d 432 (1967); *Fair Lanes, Inc. v. Comptroller*, 239 Md. 157, 210 A.2d 821 (1965); *Comptroller v. M.E. Rockhill, Inc.*, 205 Md. 226, 107 A.2d 93). We noted this distinction further in *Xerox Corp. v. Comptroller*, 290 Md. 126, 136–37, 428 A.2d 1208, 1214 (1981):

> The determination of whether Xerox's interest income is taxable under [former Article 81,] § 280A [ (currently § 10–304) ] necessitates consideration of whether § 280A(c)(4) is a "definition" of taxable income, and therefore to be construed strictly against the State, or an "exemption" from taxable income, to be construed in favor of the State.

> In *Balto. Foundry v. Comptroller*, 211 Md. 316, 127 A.2d 368 (1956), ... the Court said:

> > "It may be observed that the exclusion of tangible personal property purchased for the purpose of resale in its original form, or for the purpose of incorporation into a finished product, is by force of the definition and not by

inclusion in the exemptions set out in sec. 322. Sales in the categories mentioned are simply not within the scope of the taxing statute. Thus the rule of strict construction of an exemption does not apply, but the rule is applicable, that, where there is doubt as to its scope, a tax statute should be construed most strongly in favor of the citizen and against the State." 211 Md. at 319–20, 127 A.2d at 369.

### B.  Authority to Impute Income Under I.R.C. § 482

██  Appellee's main argument is that "[t]he Maryland Tax Code does not expressly authorize [appellant] to impute interest income" and that appellant "is *not* granted that discretionary authority by Federal law."  Further, appellee contends that if appellant wishes to have such authority, appellant should seek it from the Legislature, not this Court.  Appellant argues that section 10–304's equation of Maryland modified income to federal taxable income and section 10–811's requirement of separate returns for each affiliated corporation together "mandate a restatement of taxable income from the number that appears on the federal consolidated return" to determine the Maryland modified income of each separate business entity.  It implies that its statutory mandate empowers it to utilize the income-determining provisions of the I.R.C. in their entirety, as necessary.

The Legislature, however, has not bestowed such authority upon appellant.  Appellant correctly notes that, under section 10–304, the Maryland modified income is equal to the federal taxable income.  Appellant's error, however, is in assuming that section 10–304 provides it with the full panoply of powers provided to the IRS by the I.R.C. to help define federal taxable income.  Our previous interpretations of section 10–304 reflect that the legislative intent behind the provision was for appellant to accept the taxable income figure reported on the federal return as the Maryland modified income, subject to certain statutorily prescribed modifications; namely, the additions and subtractions listed in sections 10–305 through 10–308.

*Comptroller v. American Satellite Corp.,* 312 Md. 537, 540
A.2d 1146 (1988), provides a strong argument for interpreting
such an intent behind the state tax code. In *American
Satellite,* appellant argued that a state tax statute allowed it to
allocate, as taxable income, certain capital gains earned in
Maryland to a corporation that had filed a consolidated federal
return reporting no taxable income. This Court disagreed,
holding that the state capital gains provision in question could
not increase the state modified income figure, because only
sections 10–305 through 10–308 authorize appellant to adjust
the federal taxable income figure. In doing so, we discussed
the legislative intent behind this system of Maryland income
tax reporting:

> [L]egislative committee reports clearly indicate that the
> purpose in enacting ch. 142 in 1967 [, the current tax code,]
> was to bring the State taxation system in conformity with
> the federal scheme. *Report of the Committee on Taxation
> and Fiscal Reform (Report )* (February 1, 1967). *See also
> Katzenberg v. Comptroller,* 263 Md. 189, 204–05, 282 A.2d
> 465[, 473] (1971); *Evans v. Comptroller,* 273 Md. 172, 175,
> 328 A.2d 272[, 274] (1974); *Marco Assoc. v. Comptroller,* 265
> Md. 669, 674, 291 A.2d 489[, 492] (1972); 66 Op. Att'y Gen.
> 242, 247 (1981); 52 Op. Att'y Gen. 451, 452–53 (1967). As
> the report indicates, such conformity was thought to foster
> enforcement. *Report* at 8. This effort to simplify the taxa-
> tion system might not fulfill its purpose if, after using
> federal taxable income as the base for determining State tax
> liability, the Maryland statutes then imposed additional
> adjustments which significantly altered the base, *other than
> the simple modifications provided by [Article 81,]
> § 280A(b) and (c)* [now embodied in sections 10–305
> through 10–308].

*Id.* at 545, 540 A.2d at 1150 (emphasis added).

We have interpreted the state tax code in a similar manner
in cases where taxpayers sought to modify their income based
on federal tax provisions. For instance, in *Marco Associates,
Inc. v. Comptroller,* 265 Md. 669, 291 A.2d 489 (1972), the
taxpayer corporation had paid no federal income tax on a large

portion of its reported income because it filed with the IRS as a "Subchapter S" corporation. It subsequently deducted that portion of its income on its Maryland tax return. Maryland, at the time, did not recognize Subchapter S corporate filings. We agreed with appellant that it was the total federal taxable income figure upon which Maryland income tax was based, not the portion of that income that was actually taxed after the federal tax break.

> Since our Act does not accord Subchapter S treatment to a corporate taxpayer which elects to be treated as such for federal tax purposes, it follows that such a taxpayer is looked upon for purposes of the Maryland tax as if it were an ordinary business corporation, and its Maryland stockholders as if they were the holders of shares in such a corporation, *see* § 280(b)(5), § 280(c)(2). This may not be fair, but it is a fact of life.

*Id.* at 675–76, 291 A.2d at 493 (citation omitted). Marco Associates further argued that its having to report the untaxable federal income was because of "a technical requirement of the Internal Revenue Code, rather than because of any real change in the situation of the parties." *Id.* at 678, 291 A.2d at 494. We replied:

> This argument ... overlooks the manner in which the Maryland income tax is structured. Its focus is on the taxable income of a corporation, or the adjusted gross income of an individual, *as the same is developed in the taxpayer's federal income tax return, subject to the modifications permitted by the Act,* whether a federal tax is or is not generated by the federal return.
>
> The fact that a gain recognized by a Subchapter S corporation and reflected in its taxable income may be attributed to the corporation's shareholders under federal law does not alter the fact that it remains within the concept of taxable income under the Act—*a figure upon which the Maryland tax is based.*

*Id.* (emphasis added). In other words, the portion of Marco Associates' income earned in Maryland was derived from the

taxable income figure provided on its federal income tax return regardless of how that income was actually taxed under the I.R.C.

We reached a similar conclusion in *NCR Corp. v. Comptroller*, 313 Md. 118, 544 A.2d 764 (1988). In that case, the taxpayer had claimed on its 1976 federal tax return a credit for certain foreign income taxes paid on foreign-earned dividends. I.R.C. § 78 required that the company "gross-up" the income reported on its federal return by the amount of the credit. Prior to 1977, the Maryland Code did not allow the company to subtract that gross-up amount from its Maryland income, even though the gross-up served no relevant state income tax purpose. We nonetheless held that appellant could tax NCR based on the grossed-up figure reported on its federal income tax form. In doing so, we stated:

> As we have seen, § 280A(a) instructs, as it did in 1976, that "[t]he net income of a corporation shall be the taxable income of such taxpayer as defined in the laws of the United States ... for the corresponding taxable period...." The purpose of that provision is "to bring the State taxation system in conformity with the federal scheme." *Comptroller v. American Satellite Corp.*, 312 Md. 537, 545, 540 A.2d 1146, 1150 (1988). Since NCR's 1976 federal taxable income included the gross-up, and *since the Maryland statutes applicable to 1976 contained no authority to adjust or deduct that figure, it should, one would think, be included in Maryland taxable income.*

*Id.* at 123, 544 A.2d at 766 (emphasis added) (alteration in original).

Finally, in *Katzenberg v. Comptroller*, 263 Md. 189, 282 A.2d 465 (1971), we reviewed the effect of the 1967 overhaul of the Maryland income tax code on capital gains taxes. Prior to 1967, capital gains were not taxed in Maryland as income. When the Legislature adopted the federal taxable income figure as the Maryland modified income, capital gains, which were taxed by the federal government, became taxable in Maryland. The taxpayers in *Katzenberg* argued that the new

tax provisions did not apply to their 1967–68 capital gains because they were earned on pre–1967 investments. Examining the use of the federal taxable income figure, we reasoned:

> [T]he whole thrust of the Maryland Act is to impose a tax on the amount determined under the Internal Revenue Code as the adjusted gross income of an individual or the taxable income of a corporation. This is a formula or yardstick objectively derived which initially takes no account of the source, nature or composition of the funds; it is simply a figure developed by the federal return.

*Id.* at 204–05, 282 A.2d at 473. We added:

> It is undoubtedly true that the General Assembly, had it seen fit to do so, could have imposed a tax on a taxpayer's gross income, without considering the source from which it came, whether it be earnings, investment income or profits realized from the sale of capital assets, and without granting exemptions, allowing deductions or permitting any other adjustments. If it could validly do this, and we think it could, there is no reason to doubt that it could select some other figure, objectively arrived at, upon which the tax could be based, *Tawes v. Strouse,* 182 Md. 508, 512–13, 35 A.2d 233[, 235] (1943). It did this when it chose to base the tax on the figures for adjusted gross income and taxable income, *as developed by the federal returns.*

*Id.* at 205–06, 282 A.2d at 473 (emphasis added). Ultimately, we upheld the assessment against the taxpayers, rejecting their argument, *inter alia,* that the new law was unconstitutionally arbitrary in its application:

> It seems to us that the State has the better of this argument when it says that the Act uses as a base an individual taxpayer's adjusted gross income reported for federal income tax purposes, with certain additions and subtractions. The Act is not directed at payments received from installment sales before the date of its enactment. Neither does it purport to be a tax on capital gains as such or a tax on installment payments as such. It is rather a tax measured by the yardstick of income reported for federal

tax purposes, whether capital gains be reflected in this figure or not.

*Id.* at 203–04, 282 A.2d at 472. *American Satellite, Marco Associates, NCR Corp.* and *Katzenberg* all lead to the same interpretation of section 10–304: the figure reported as federal taxable income on a federal return is the base figure used on the Maryland tax form as Maryland modified income, subject to recalculation only by sections 10–305 through 10–308.[5] Appellant apparently understands this interpretation of its power to compute Maryland income tax to be correct. In its own regulations, COMAR 03.04.03.05(B), "Use of Federal Figures," appellant has determined that "[t]he starting point for the Maryland return is the taxable income as defined in the Internal Revenue Code *and developed on the federal return.*" (Emphasis added.)

The Illinois Appellate Court, in *Bodine Electric Co. v. Allphin,* 70 Ill.App.3d 844, 27 Ill.Dec. 356, 389 N.E.2d 168 (1979), *aff'd,* 81 Ill.2d 502, 43 Ill.Dec. 695, 410 N.E.2d 828 (1980), made a similar interpretation of their state's corporate income tax code. The parties in *Bodine Electric* debated the effect a federal tax code provision regarding net operating losses had on the taxpayer's state taxable income. Noting that the state income tax "provisions mandate that the taxpayer's state base income is equal to its Federal taxable income as determined on a separate return basis and subject to specified adjustments," *id.* at 846, 27 Ill.Dec. 356, 389 N.E.2d at 170, the Appellate Court balked at the parties' implication that the I.R.C. provision at issue had any effect on the amount of state taxable income:

There is no provision in the Illinois Act which specifically adopts all federally allowed deductions; however, the Illi-

---

5. There are other provisions that affect the final income figure reported on the Maryland tax form; for instance, 10–402 requires that only Maryland-earned income be reported by corporations and section 10–811 requires affiliated corporations to allocate income to each separate business entity. The provisions in Subtitle 3 *calculate* Maryland modified income; these other provisions *apportion* the calculated modified income.

nois Act does specifically adopt federal taxable income as the starting point upon which the state tax is computed. . . .

. . . .

Although the legislature has adopted federal taxable income as a starting point for calculating state corporate income tax, it has not enacted a specific statutory provision allowing a deduction for net operating loss. . . .

. . . We must, therefore, conclude that the taxpayer is entitled to a net operating loss deduction only in the same manner and amount as the taxpayer would have been entitled to such a deduction on its federal income tax return for the same taxable year.

*Id.* at 847, 848, 27 Ill.Dec. 356, 389 N.E.2d at 171, 172. In affirming, the Illinois Supreme Court held that "the legislature's intent [is] that a net-operating-loss deduction is relevant to the computation of Illinois tax liability only insofar as this deduction enters into the computation of base income under the relevant provisions of the Act." 81 Ill.2d at 510, 43 Ill.Dec. 695, 410 N.E.2d at 832. *See also B.W. Co. v. State Tax Comm'n,* 370 Mass. 18, 20, 345 N.E.2d 884, 886 (1976) (noting that a gain not included on the taxpayer's federal tax return "was not part of its Federal gross income and literally, therefore, was not part of the taxpayer's Massachusetts gross income.").

We note that appellant responds to appellee's argument that I.R.C. § 482 authorizes only the IRS to allocate income by pointing out several I.R.C. provisions that empower the IRS to perform various income-determination functions. Appellant implies that it too can enforce these provisions to ensure that taxpayers accurately report their Maryland modified income. Most of the I.R.C. provisions cited by appellant, however, either impose mandatory powers upon the IRS or grant it the authority to impose mandatory regulations in order to calculate federal taxable income.[6] This is completely different from

---

6. Some of the I.R.C. provisions cited by appellant grant the IRS discretion to allow a taxpayer to modify its accounting procedures or

I.R.C. § 482, which grants the IRS full discretion to individually impute income between affiliated taxpayers.

If a taxpayer failed to report certain income on its federal tax return that the I.R.C. *mandated* it to report, and the IRS accepted that figure, appellant should be permitted to recalculate the Maryland modified income because the federal taxable income figure it relies on would be incorrect. Likewise, if the IRS exercised its discretion to create mandatory regulations that required the taxpayer to report certain income, and the taxpayer failed to do so, appellant could follow those IRS regulations in recalculating the Maryland modified income. In both cases, the statute or regulation are rigid and objective in their determination of what is taxable income. If we were to hold that appellant could never apply such provisions, then taxpayers who evade their federal income taxes would be free, without considering criminal sanctions, to evade their Maryland income tax obligation as well.[7] We should not attribute such an illogical intent to the Legislature's 1967 revision of the state tax code. *See Degren v. State,* 352 Md. 400, 418, 722 A.2d 887, 895 (1999) ("[W]e should construe the statute in a manner that results in an interpretation 'reasonable and consonant with logic and common sense.'" (quoting *Lewis v. State,* 348 Md. 648, 654, 705 A.2d 1128, 1131 (1998))); *Edgewater Liquors, Inc. v. Liston,* 349 Md. 803, 808, 709 A.2d 1301, 1303 (1998) ("[W]e approach statutory construction from a common sense perspective."); *Lewis,* 348 Md. at 662, 705 A.2d

---

period. The Maryland income tax code generally requires the taxpayer to follow the same procedures or period used on its federal return on its Maryland return. § 10–501. Similar to the I.R.C. provisions, section 10–504 specifically grants appellant the authority to allow the taxpayer to change its accounting period. The General Assembly thus has already made a legislative determination to incorporate these federal provisions into the Maryland income tax code.

7. The existence of criminal sanctions shows why it would be absurd not to attribute the power to recalculate Maryland modified income to appellant when the federal tax return figures are incorrect. If appellant had no such power, the State could prosecute the taxpayer for tax evasion, but still would not be able to collect taxes on unreported modified income.

at 1135 ("We shall not interpret a statute to produce unusual or extraordinary results, absent the clear legislative intent to enact such a provision."); *D & Y, Inc. v. Winston,* 320 Md. 534, 538, 578 A.2d 1177, 1179 (1990) ("[C]onstruction of a statute which is unreasonable, illogical, unjust, or inconsistent with common sense should be avoided."); *Blandon v. State,* 304 Md. 316, 319, 498 A.2d 1195, 1196 (1985) ("[R]ules of statutory construction require us to avoid construing a statute in a way which would lead to absurd results.").

I.R.C. § 482, on the other hand, is completely within the subjective discretion of the IRS: "the Secretary *may* distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among ... businesses." (Emphasis added.)  As stated in Treasury Regulation § 1.482–1(a)(1) (as amended in 1994), "[t]he purpose of section 482 is to ensure that taxpayers clearly reflect income attributable to controlled transactions, and to prevent the avoidance of taxes with respect to such transactions."  As a result, "[t]he [IRS] district director *may* make allocations between or among the members of a controlled group if a controlled taxpayer has not reported its true taxable income." *Id.* § 1.482–1(a)(2) (emphasis added).  I.R.C. § 482 and its corresponding regulations, therefore, grant the IRS a choice whether to allocate income between affiliated taxpayers when evidence exists that the taxpayer had not reported its income correctly.  Because we must construe our own income-determining statutes against appellant, *see supra,* we cannot extend such a discretionary choice to appellant.  If the IRS fails to impute discretionary federal taxable income to the taxpayer, appellant must accept that determination, and the resulting federal taxable income figure, as the Maryland modified income.  As we noted in *Marco Associates,* 265 Md. at 676, 291 A.2d at 493,"[t]his may not be fair, but it is a fact of life."

The New York Court of Appeals made a similar interpretation of its state income tax provisions in *People ex rel. Barcalo Mfg. Co. v. Knapp,* 227 N.Y. 64, 124 N.E. 107 (1919).  At the time, in New York

[a] definition of the words "net income" was not incorporated in the [state] statute. The meaning given and characterizing them through and as used in the Federal statutes was their meaning as used in the state statute. The conditions and limitations, expressed in the Federal statutes, creating their office and effect under those statutes are adopted by the state statute. It used the term net income as established by the Federal statutes.

*Id.* at 70–71, 124 N.E. at 108. To the court, this meant that "within the legislative intention the net income of the statute is that *returned or reported* to the United States in accordance with the Federal statutes." *Id.* at 71, 124 N.E. at 108 (emphasis added). The court noted, as we do in the case *sub judice,* that "the [state tax] commission is free to fix, from the return and any other information, the true and correct amount of the net income, but not to change the nature or definition of it." *Id.* In other words, the state tax agency is free to correct falsehoods and incorrect statements made on the federal income tax return, subsequently transferred to the state return, but not alter the definition of what is or is not the taxpayer's income. The authority bestowed upon the IRS by I.R.C. § 482 is a power in the latter category. Thus, for appellant to possess authority similar to that contained in I.R.C. § 482, they must seek it from legislative enactment.[8]

That several of our sister states' legislatures have adopted statutes that specifically incorporate I.R.C. § 482 into their tax code or bestow § 482–type powers upon its state revenue agency bolsters our holding that appellant can only exercise such powers with the grace of the General Assembly. The legislatures of Alaska, California, and Hawaii, for instance, have expressly incorporated I.R.C. § 482 into their own tax codes. *See* Alaska Stat. § 43.20.021(a) (Lexis 1998); Cal. Rev. & Tax.Code § 24725 (West 1999); Haw.Rev.Stat. § 235–2.3

---

8. For instance, after *Marco Associates,* 265 Md. at 678, 291 A.2d at 494, held that S corporations must pay income tax on all their federal reported income, including the tax-free portion under the I.R.C., the General Assembly expressly incorporated the Subchapter S corporation tax break into section 10–304(3). *See* 1988 Md. Laws, Chap. 135, § 1.

(Supp.1998). A number of other state legislatures have adopted their own statutes based upon the language of I.R.C. § 482. *See* Ariz.Rev.Stat. Ann. § 43–942(A) (West 1998); Ark.Code Ann. § 26–51–805(e) (Michie 1997); Colo.Rev.Stat. Ann. § 39–22–303(6) (West 1999); D.C.Code Ann. § 47–1810.3 (1997); Ind.Code Ann. § 6–3–2–2(m) (Michie 1998); Kan. Stat. Ann. § 79–32,141 (1997); La.Rev.Stat. Ann. § 47:287.480(2) (West 1990); Okla. Stat. Ann. tit. 68, § 2366 (West 1992); Or.Rev.Stat. § 314.295 (1997);[9] Utah Code Ann. § 59–7–113 (1996); Wis. Stat. Ann. §§ 71.30(2), .80(1)(b) (West 1999). At least six other states provide their respective tax authority with broad power to prevent distortions of net income and deceptive tax accounting methods. *See* Conn. Gen.Stat. § 12–226a (1997); Ga.Code Ann. § 48–7–58(a) (1995); N.Y. Tax Law § 211(5) (Consol.1990); N.C. Gen.Stat. § 105–130.16 (1997); R.I. Gen. Laws § 44–11–4 (1995); Va.Code. Ann. § 58.1–446 (Michie 1997). There is no reason why appellant could not seek similar authority from the General Assembly. However, until appellant obtains the authority to allocate income for tax enforcement purposes, it cannot assume that it has such authority from the provisions of the federal tax code. *See Allison v. Department of Revenue,* 11 Or. Tax 431, 435 (1990) (holding that the state legislature had not adopted I.R.C. § 482 by reference); *cf. Ex Parte Jones Mfg. Co.,* 589 So.2d 208, 210 (Ala.1991) (noting that the state legislature had statutorily adopted I.R.C. § 337, which prevented gains made from a total liquidation of assets from being assessed, but not I.R.C. § 1245, which required any part of those gains that recaptured depreciation to be assessed); *In re Estate of Armstrong,* 133 Mont. 328, 331–32, 323 P.2d 595, 596–97 (1958) (holding that a state law authorizing taxpayers to use the "best accounting practice in the trade or business" did not incorporate by reference a federal tax provision granting special capital gains tax status to breeding animals and that, to hold otherwise, would "amount[ ] to judicial legislation.").

---

**9.** In personal income tax matters, Oregon has adopted by reference all of the income-determining provisions of the I.R.C. *See* Or.Rev.Stat. § 316.007 (1997).

■ Finally, we address appellant's implication that section 10–107, which states "[t]o the extent practicable, [appellant] shall apply the administrative and judicial interpretations of the federal income tax law to the administration of the income tax laws of this State," requires it "to apply . . . all relevant principles of federal tax law," including those contained in I.R.C. §§ 482 and 7872. Section 10–107 is not a direct authorization for appellant to incorporate into the Maryland tax code whatever I.R.C. provisions it sees fit to apply; rather, section 10–107 expresses a policy of comity that, when exercising any legislatively-authorized powers that parallel an I.R.C. provision, appellant must comply with the judicial and administrative interpretations of that federal statute. We noted as much in *Lyon v. Campbell*, 324 Md. 178, 185, 596 A.2d 1012, 1015 (1991):

> Section 10–107 applies where the Maryland tax code is " 'inextricably keyed' " to the federal tax code "by virtue of its adoption of the federal law." *Comptroller v. Chesapeake Corp.*, 54 Md.App. 208, 213–14, 458 A.2d 459, 463 (1983). It avoids the "anomalous result" of the taxpayer achieving a different result regarding payment of Maryland tax where the Maryland tax provision incorporates the federal tax provision. *See Comptroller v. Diebold, Inc.*, 279 Md. 401, 409, 369 A.2d 77, 82 (1977) (holding that where the Maryland tax code incorporates a federal tax code provision, the interpretation of the Maryland and federal tax provisions should be consistent).

Other states have interpreted their particular version of section 10–107 in a similar manner. In *Commonwealth ex rel. Allphin v. Borders*, 267 S.W.2d 940, 941 (Ky.1954), the taxpayer argued that Kentucky's version of the statute stood "for the proposition that the federal law would be applied unless the state law expressly provided for a different result." The Court of Appeals of Kentucky agreed with the state tax authority, however, that the statute "contemplated only the adoption of *interpretations* of federal law in those cases where the same or a similar situation arose under the state law, or where the provisions of the federal and state laws were

similar." *Id.* The court also noted that "[i]f we were to accept the argument of the taxpayer, it would mean that every deduction allowed under the federal law and not mentioned in the state law would have been allowable for state income tax purposes...." *Id.* The Supreme Judicial Court of Maine, in *Central Maine Power Co. v. Public Utilities Commission*, 382 A.2d 302, 320 (Me.1978), has said that Maine's version of the statute "merely attempts to resolve semantic conflicts in the interest of efficiency.... [W]e do not view [the statute] itself as mandating our passive acceptance of all federal interpretations of federal tax statutes." *Cf. In re Estate of Armstrong*, 133 Mont. at 331, 323 P.2d at 596–97 (noting that when a specific Montana "income tax law in force ... bore no likeness to the Federal law," that "[r]esort to the Federal statutes or decisions" would provide "no aid in the *interpretation* of the state statute." (emphasis added)).

Section 10–107 does not grant any authority to appellant. The statute merely states that, when appellant is specifically empowered to enforce an I.R.C. provision, it must obey the previous administrative and judicial interpretations of the tax law at issue as precedent. The statute does not allow appellant to put forth its own interpretation that a federal tax law is incorporated into the Maryland tax code.

### C. Authority to Impute Income Under I.R.C. § 7872

■ The plain language of I.R.C. § 7872 reflects that it is a mandatory income-determining provision for the IRS. It does not grant the IRS, as I.R.C. § 482 appears to, any discretion over whether to enforce its terms, except through self-imposed regulations. Thus, appellant may enforce the terms of that federal statute in determining Maryland modified income, when its application affects the federal taxable income figure.

We noted, *supra*, that section 10–107 mandates that appellant comply with all judicial and administrative interpretations of I.R.C. § 7872. The IRS has adopted regulations describing what types of transactions are to be affected by I.R.C. § 7872. They state in part:

(3) *Loans without significant tax effect.* Whether a loan will be considered to be a loan the interest arrangements of which have a significant effect on any Federal tax liability of the lender or the borrower will be determined according to all of the facts and circumstances. Among the factors to be considered are—

(i) Whether items of income and deduction generated by the loan offset each other;

(ii) The amount of such items;

(iii) The cost to the taxpayer of complying with the provisions of section 7872 if such section were applied; and

(iv) Any non-tax reasons for deciding to structure the transaction as a below-market loan rather than a loan with interest at a rate equal to or greater than the applicable Federal rate and a payment by the lender to the borrower.

Temp. Treas. Reg. § 1.7872–5T(c)(3) (as amended in 1998).

■ Section 10–107 requires appellant to follow this regulatory interpretation as worded by the IRS. As appellee argues, the regulation is only concerned with the effect a transaction will have on federal tax liability; in this case, the intercompany account transactions had no effect because their tax consequences offset each other, a situation specifically addressed by the regulation. As a result, I.R.C. § 7872 could not affect appellee's taxable income as reported on its federal return. Because appellee complied with both the statute and the regulation, the corporate taxable income figure is correct as reported on its federal tax return. As we noted, *supra,* appellant may enforce a mandatory provision, like I.R.C. § 7872, to ensure that the federal taxable income figure transferred to the Maryland tax form is correct. Appellant wishes to take the auspices of I.R.C. § 7872 a step further, however, and impute income for purely State income tax purposes. This it cannot do; once the federal taxable income figures are verified as true and correct under the mandatory I.R.C. provisions, appellant must accept those figures. In this case, the credits legitimately were left unreported on appellee's federal tax return; appellee could not thereafter add

those credits to appellee's Maryland modified income in order to generate State income tax.

### III. Conclusion

In calculating Maryland modified income for an affiliated corporation in Maryland, appellant generally must accept the figure adopted as taxable income on the corporate taxpayer's consolidated federal return, subject to the specific Maryland modifications allowed under Maryland's tax code. In this case, appellee's modified federal taxable income as reported on its consolidated tax returns did not reflect any income derived from I.R.C. §§ 482 and 7872. Appellant could only allocate appellee's portion of that consolidated income based on the remaining applicable state code provisions pertaining to apportionment and modification. None of those provisions grant any power to appellant, similar to that contained in I.R.C. § 482, to allocate or impute income for tax enforcement purposes. Nor do any of these provisions authorize appellant to enforce I.R.C. § 7872 beyond its terms in order to generate state income tax from income legitimately not reported on a taxpayer's federal return.

The decision of the circuit court is affirmed.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**